Lloyd GOOD, Plaintiff in error,

v.

Carl W. WHAN, d/b/a Whan Drilling Company, Defendant in Error.

No. 37860.

Supreme Court of Oklahoma.

Jan. 27, 1959.

Rehearing Denied Feb. 24, 1959.

Richard James, Stroud, James M. Springer, Jr., Stillwater, for plaintiff in error.

Swank & Swank, Stillwater, for defendant in error.

BLACKBIRD, Justice.

Plaintiff in error, hereinafter referred to as plaintiff, instituted the present action against defendant in error, hereinafter referred to as defendant, to recover damages for personal injuries, physical disability, loss of income, etc., resulting from burning his leg on a crude heating stove used in connection with defendant's drilling operations. Some of the material facts forming the background of the action are hereinafter related.

Plaintiff, owner of the surface of, and a one-fourth interest in the minerals in and under, a quarter section of land, resided on the Southeast corner of said tract. He entered into an agreement with the Finley Company, owner of the other three-fourths interest in the minerals, whereby each of said owners would share, in the relative proportions of their interest in the minerals, the cost of drilling a well in the northwestern part of said tract. For the purpose of obtaining a contract for doing the drilling of said well, an employee of defendant's partnership predecessor, Whan & Howard Drilling Company, contacted plaintiff, who referred him to either one of two men connected with the Finley Company; and the drilling contract was thereafter negotiated by said Company.

Either as a part of the original arrangement between plaintiff and the Finley Company, or under a subsequent addition to, or modification thereof, it was agreed between them that after the well reached the depth of the Prue sand, they would determine whether the prospects of encountering production therein would warrant setting pipe at that depth and exploring, or drilling the well, deeper. Under said agreement, if one thought that such expense was justified and the other did not, then the other could abandon the project and leave the expense of setting pipe and drilling the well deeper to his associate. For his benefit in making such determination on his part, plaintiff would go to the well to learn from the geolograph, located in what is termed the "dog house" (erected alongside the rig), the depth at which the various formations were being encountered in the course of the drilling, in order to relate said well's log to one previously drilled south of it. In the early part of the drilling, plaintiff went to the well for this purpose only in the mornings before his workday began; but, when the well got deeper and closer to the Prue sand, he began going there both morning and evening. On two of these occasions, he encounterd defendant there (in addition to the drilling crew).

On the day of the accident, December 27, 1954, plaintiff made his regular morning trip to the well about 7:30 o'clock. The well was then deeper than 3,700 feet. The day before, one core had been pulled out of it from the Skinner sand, and defendant's

drilling crew was in the process of obtaining another such core, which plaintiff wanted to see.

The accident occurred after plaintiff had walked across the rig floor into the dog house and while certain members of the daytime drilling crew were in there putting on their work clothes (preparatory to relieving the night crew) and plaintiff was standing near the stove warming himself and talking to a neighbor visiting the wellsite. A member of the night crew, who had rushed from the rig floor into the dog house, went to the tool box behind plaintiff, stooped over to open it, and suddenly stepped backward, pushing plaintiff against the stove and burning his leg. This heater, or stove, was constructed of a piece of ten inch oil field pipe standing on legs about twelve inches from the floor, with a gas pipe forming a jet inserted in it. It is of a type in common use in oil field drilling operations.

In his petition, plaintiff alleged, among other things, that he was an invitee on the premises at the time of the accident, and, in general substance, further alleged that the injuries he suffered by being burned were the result of defendant's neglect, or that of his employees for which he was responsible. In defendant's pleadings, he denied plaintiff's allegations of his negligence, also denied, among other things, that at the time of the accident, plaintiff was an invitee on the premises, and, alleged, among other defenses, that the accident was the result of plaintiff's contributory negligence in various particulars.

At the close of plaintiff's evidence establishing the above facts, among others concerning the nature and extent of plaintiff's injuries, and the amount of his damages, unnecessary here to detail, the court sustained defendant's demurrer to plaintiff's evidence and dismissed the action. In doing so, he stated:

"* * * viewed in the most agreeable light towards the plaintiff * * * the Court can come to but one conclusion and that is that the plaintiff was a *licensee* on the premises. The Court is of the view that a duty which defendant owed towards the plaintiff, being that of a licensee, was to use ordinary care towards the plaintiff as regards any dangerous conditions or concealed traps which the defendant knew or reasonably should have known about, and also the duty to use ordinary care not to injure the plaintiff by *active* negligence. In viewing the evidence in its most favorable light towards the plaintiff, the Court is of the opinion that there is only one conclusion that can be arrived at by the minds of reasonable men, and that is that the defendant is not negligent towards the plaintiff when measured by these rules." (Emphasis ours.)

In his present appeal from said judgment, plaintiff contends, in two propositions of error, that the trial court erred both in his view that he was a licensee, instead of an invitee, on the drilling premises, and in determining (as a matter of law) that defendant was not negligent in causing the accident involved. Defendant relies on certain quotations in Julian v. Sinclair Oil & Gas Co., 168 Okl. 192, 32 P.2d 31, to negate plaintiff's argument on both propositions. A careful examination, and analysis, of this court's opinion in that case reveals that it does not support defendant's position. While it is true that in said opinion's review of earlier cases, it quotes excerpts from Atchison, T. & S. F. Ry. Co. v. Cogswell, 23 Okl. 181, 99 P. 923, 924, 20 L.R.A., N.S., 837, and Midland Valley R. Co. v. Littlejohn, 44 Okl. 8, 143 P. 1, concerning the difference in the inference to be drawn, as to his status as invitee or licensee, of a person, who enters the premises of another in his own interest, pleasure, or benefit, and one who does so for the "common interest, or mutual advantage" of both him and the proprietor of the premises (in this connection, notice 33 Am.Jur., "Licenses", sec. 94) before arriving at its decision or conclusion, the opinion shows that even as toward a licensee, the proprietor has the duty of exercising ordinary care; and that the difference between the duty of care he owes a licensee and that which he owes a trespasser

(ordinarily spoken of as being that of merely avoiding wanton or willful injury to him and preventing his injury from pitfalls, mantraps or other hidden dangers) is bottomed, or grounded, upon the difference in the proprietor's presumed knowledge of his presence. A part of said opinion's quotation from Petree v. Davison-Paxon-Stokes Co., 30 Ga.App 490, 118 S.E. 697, 699, speaks of the licensee as follows:

\* \* \* \* \* \*

" \* \* \* *since his presence as a result of his license is at all times probable, some care must be taken to anticipate his presence, and ordinary care and diligence must be used to prevent injuring him after his presence is known or reasonably should be anticipated.* (Italics ours) The fundamental concept in this class of cases, as in that of trespassers is of a liability only for willful or wanton injury; *but it is usually willful or wanton not to exercise ordinary care to prevent injuring a person who is actually known to be, or reasonably is expected to be, within the range of a dangerous act being done.* (Citing cases)." (Last italics ours).

Without unnecessarily lengthening this opinion with an analysis or resume of the one in the Julian case, supra, it is sufficient to say that this court repeatedly pointed out therein that in all cases—even including those dealing with railroad accidents—the degree of a proprietor's care toward one injured on the premises over which he has control "is commensurate with the probability" of the latter's being there; that such degree depends on the facts or circumstances; and is therefore a question for the jury. We there concluded by saying:

"The above authorities from this court are cited to show that this court has recognized that there is a marked difference between a trespasser and a licensee in so far as the liability of a landowner is concerned for injury occurring on said owner's property. It is right and proper that an owner

should be liable to a trespasser only for willful and wanton injury, while *it is contrary to reason and justice to apply the same rule to a licensee, without due consideration to the facts and circumstances of the particular case.* In the light of the later decisions, we may now safely say that this court is committed to the rule that, *under some circumstances, an owner or proprietor is charged with the duty of exercising ordinary care, to avoid injuring a licensee, which is that degree of care a person of ordinary prudence would usually exercise under the facts and circumstances of the particular case.* Whether or not that has been done, under proper instructions, is a question of fact for the jury. (Citing cases)."

In this connection, also notice Eddy v. Oklahoma Hotel Building Company, 10 Cir., 228 F.2d 106.

■■ Applying the above to the present case, if plaintiff was no more than a licensee in defendant's dog house, or on the drilling premises, defendant still owed him the duty to exercise at least ordinary care. This being true, we find it unnecessary to decide whether plaintiff was a licensee or an invitee. It will be recalled that in his oral remarks preliminary to sustaining defendant's demurrer to plaintiff's evidence, the trial judge used the term "ordinary care", but the complete text of his remarks does not accurately, nor completely, describe defendant's duty toward plaintiff. The judge seems to have been of the opinion that this duty was limited to defendant's use of "ordinary care not to injure the plaintiff by *active* negligence" (Emphasis ours); but, aside from the question of whether defendant owed plaintiff the duty, under the particular circumstances of this case, of having installed the stove in a different place or manner, or of having placed a guard of some sort around it, or having taken other safety measures to prevent defendant's being injured on the premises (which question, we do not want to be misunderstood as holding, was, necessarily an issue in this case) the evidence showed that an important

factor in plaintiff's injury was an *act* of one of defendant's employees. After carefully examining the record, we cannot concur in the trial judge's opinion that all reasonable men would agree, on the basis of the evidence in this case, that defendant did not breach his duty of exercising at least ordinary care, and was not negligent toward plaintiff. Accordingly, we think the trial court erred in assuming the prerogative of determining that question, which, on the basis of plaintiff's undisputed evidence, and the reasonable inferences to be drawn therefrom, was for the jury. The order and judgment of the trial court sustaining defendant's demurrer and dismissing the action was error. Said court's order and judgment overruling plaintiff's motion for new trial is therefore reversed, and said court is directed to vacate its previous judgment and grant plaintiff a new trial.

DAVISON, C. J., WILLIAMS, V. C. J., and JACKSON, IRWIN and BERRY, JJ., concur.

WELCH and JOHNSON, JJ., concur in result.

HALLEY, J., dissents.