Kristin **BREWER, a minor, By and Through her parents and next friends, Ronald BREWER and Judie Brewer; Ronald Brewer, individually; and Judie Brewer, individually, Appellants,**

v.

**INDEPENDENT SCHOOL DISTRICT # 1, Appellee.**

No. 72228.

Supreme Court of Oklahoma.

March 2, 1993.

Ronald V. Collier, Merritt, Rooney, Collier & Rooney, Inc., Oklahoma City, for appellants.

W. Wayne Mills, Tim D. Cain, Mills, Whitten, Mills, Mills & Hinkle, Oklahoma City, for appellee.

SUMMERS, Justice:

Five year old Kristin Brewer suffered head injuries when she fell from a slide on the grounds of an elementary school in Alva. The grounds were unattended as school was in recess for the summer. Her suit for damages met with an early termination in the District Court; the defendant School District's motion for summary judgment was sustained. The Court of Appeals affirmed and we have granted certiorari. The questions to be resolved are these: (1) Does the acquisition of liability insurance by the School District strip it of its statutory defenses to liability? (2) If it does not, are the facts as presented such that the defendant is entitled to judgment as a matter of law? We hold that the School's policy of liability insurance does not deprive it of its statutory defenses, and that summary judgment was proper under the facts.

The School's motion for summary judgment denied negligence, and pleaded four specific exemptions under the Oklahoma Governmental Tort Claims Act, 51 Okla. Stat.1981 § 155, as follows:

The state or a political subdivision shall not be liable if a loss or claim results from:

(7) Any claim based on the theory of attractive nuisance.

(13) ... [F]ailure to make an inspection, or making an inadequate or negligent inspection....

(24) Any claim based on the theory of manufacturers products liability....

(26) Acts or omissions done in conformance with then current recognized standards.

Plaintiffs' response was (1) that the School by obtaining liability insurance waived those statutory exemptions, and (2) that reasonable minds may differ regarding the facts of the case and the inferences to be reasonably drawn therefrom.[1] The order granting the Defendant's motion does not state the Court's rationale for the decision. However, the hearing transcript indicates that the judge based his ruling on a collective application of all four asserted exemptions.

## I. THE INSURANCE POLICY

■ Plaintiffs first claim that summary judgment was improper because the School waived its immunity under the Act by obtaining insurance, citing *Herweg v. Board of Education*, 673 P.2d 154, 156 (Okla. 1983) and *Lamont Independent School District v. Swanson*, 548 P.2d 215 (Okla. 1976). Title 51 O.S.1991 § 158 B. provides that if a political subdivision has liability insurance the terms of the policy govern the claim. The School admits that it obtained liability insurance, but that the policy, in pertinent part, reads:

The Company will pay on behalf of the PERSONS INSURED, subject to the limits of liability stated below, all sums which the PERSONS INSURED *shall become legally obligated to pay by reason of liability imposed by law (including*, but not limited to, *liability resulting from the Political Subdivision Tort Claims Act* unless otherwise excluded) for damages. (emphasis added)

The School asserts that the immunity from liability provided by the Act was not waived by acquisition of the policy, because the policy specifically limited coverage to any liability "imposed by law."

In *Lamont*, we were faced with the question of whether the school district waived immunity from liability for a player's injury which occurred during a school basketball game. *Id.* at 216. Sovereign or governmental immunity was still available as a defense at common law. The legislature did not enact a Governmental Tort Claims Act (actually, its forerunner, the Political Subdivision Tort Claims Act) until 1978, and *Vanderpool v. State*, 672 P.2d

---

1. Actually, plaintiff advocated as a third objection to summary judgment the proposition that a school district acts *ministerially* in maintaining such improvements as the slide. That would be an issue of concern to us only if the School had claimed exemption under § 155(5): Performance of or failure to do any act within the *discretion* of the political subdivision. *See Robinson v. City of Bartlesville*, 700 P.2d 1013 (Okla.1985). Since defendant chose *not to* invoke the defense of "discretion" plaintiffs' argument need not be addressed.

1153 (Okla.1983), had not yet erased the doctrine of judicially established sovereign immunity. The *Lamont* Court reasoned that the purpose of sovereign immunity was to protect the taxpayers' funds from depletion by lawsuits. *Id.* at 217. However, when insurance had been obtained to cover the type of injury in question, the funds were not in danger of depletion. We therein held that "securing liability insurance is not an absolute waiver of governmental immunity but is a waiver of governmental immunity to the extent of the insurance coverage only." *Id.*

Later, in *Herweg*, we addressed a similar question. There, a high school football player brought suit for injuries which occurred during a football game. The school had allegedly purchased insurance, but the extent of coverage was not disclosed. The Political Subdivision Tort Claims Act was in effect. The school urged that it was exempt from liability under 51 O.S.1981 § 155(20), which stated that a political subdivision was not liable for injuries arising out of "participation in or practice for any interscholastic athletic event." The player urged that by obtaining insurance, the school had waived its immunity under the Tort Claims Act. This Court, relying on *Lamont*, stated that "even when a political subdivision would be otherwise exempt under the Act, it is still liable on an insured risk to the extent of coverage under liability insurance." *Herweg*, 673 P.2d at 156. In other words, the school district waived immunity to the extent of the insurance coverage. The petition, however, was held demurrable because of failure to plead the insurance policy.

Application of these cases to ours leads us to conclude that the School waived immunity to the extent of insurance coverage.[2] However, it does not necessarily follow that the *exemptions* to liability found in Section 155 have been waived because the School obtained insurance. Both *Herweg* and *Lamont* specifically state that *immunity is only waived to the extent of coverage.* We conclude that the "extent of

coverage" refers to not only the dollar amount available under the policy, but also the risks insured against by the policy. Thus, the language of the policy becomes important to define the extent of coverage which in turn directly affects the School's immunity.

Here, the policy clearly states that the insurer will pay on behalf of the insured School those amounts (subject to policy limits) that the School becomes legally obligated to pay. The policy continues by stating that this coverage includes liability imposed by the Governmental Tort Claims Act. Clearly, the policy did not intend to insure those injuries for which the School would not be liable under the Act. The extent of the insurance coverage is limited to the liability imposed by law.

Plaintiffs urge that by failing to expressly state the Section 155 exemptions in the policy, the policy contemplated coverage even in the exempt situations. We disagree. The policy was clear; it would insure only those liabilities imposed by law, and specifically stated that coverage extended to the School's liability as imposed by the Governmental Tort Claims Act.

Based on the language of the policy, we thus conclude that the School did not waive its immunity under Section 155. *Herweg* and *Lamont* support this result. Under these circumstances, if we were to determine that immunity had been waived, that would not operate to increase coverage under the policy. Rather, it would open the School to liability for an uninsured risk, and the possible depletion of School funds. Since the School's insurance only covered those liabilities imposed by law, the coverage did not create liability where the school would otherwise be legally exempt.

## II. STATUTORY EXEMPTIONS FROM LIABILITY AND THE GRANT OF SUMMARY JUDGMENT

Having held that the statutory exemptions from liability are not waived by acqui-

---

**2.** Other states have dealt with this problem through legislative enactments specifying whether immunity is waived by obtaining insur-

ance. *See, e.g.,* Michigan, M.C.L.A. § 691.1409, Nebraska, N.C.A. 13–916.

sition of a policy insuring only against risks imposed by law, we must next determine if the facts of the case indisputably fall within any one of the exemptions raised in defendants' motion. The plaintiffs alleged that the slide was dangerous due to inadequate railings on the slide, contained an opening near the top through which children could fall, that defendants failed to warn of such hazards, that it negligently failed to keep its premises in a reasonably safe condition, and that it failed to inspect at proper intervals. They further alleged that the concrete piers under the supports of the slide were exposed and protruding above ground level, causing or aggravating Kristin's head injury when she fell.

At the hearing on summary judgment the Brewers offered expert testimony as to the condition of the slide, the hard surface beneath it, and the danger of the exposed concrete piers. Let us examine School's claimed exemptions one at a time.

■ Clearly the plaintiffs cannot proceed on their theory of failure to inspect. Section 155(13) exempts a political subdivision from liability for "[i]nspection powers or functions, including failure to make an inspection, or making an inadequate or negligent inspection, of any property...." The trial court was correct in eliminating failure to inspect as a basis for recovery.

It is similarly simple to dispose of the School's claim that it is exempted under Section 155(24), which exempts any claim or action based on manufacturer's products liability or breach of warranty.[3] Although during the discovery stage Brewer considered filing a claim against the slide's manufacturer, no such claim was filed. Furthermore, Plaintiffs did not assert the theory of manufacturer's products liability against the School. In one deposition, Plaintiffs suggested that the School was liable for the faulty design of the slide. However, no such allegation was made in the amended petition. Plaintiffs have not sought recovery for manufacturer's products liability. Of course, if such a theory should be asserted the School would be exempt from

liability under subparagraph (24) That claimed exemption is presently inapplicable to this case.

■ The School next asserts that it is exempt from liability under Section 155(7), which states that no liability can be imposed for "any claim based on the theory of attractive nuisance." Plaintiffs alleged that Kristin was a minor and that the slide was unsafe for children of her size. It is common knowledge that slides are built for children and children are attracted to slides. Thus, we agree that the petition can be construed to urge recovery under the theory of attractive nuisance.

■ Although the common-law rule is that the duty owed by the landowner is of a lesser degree to an individual on the property without permission, the attractive nuisance doctrine operates to impose a higher duty of care on the landowner in a limited set of circumstances. *Lohrenz v. Lane*, 787 P.2d 1274, 1277 (Okla.1990). The doctrine creates this exception to the common-law rule when children of tender years are attracted onto the property and thus brought into contact with a dangerous condition on the premises. *Knowles v. Tripledee Drilling Co., Inc.*, 771 P.2d 208, 210 (Okla.1989). The doctrine of attractive nuisance requires a balancing of the interests of society in children against the inherent right of a landowner in the enjoyment of his property. *Id.*

■ While the application of the attractive nuisance doctrine is generally a question of fact because many different factors must be weighed and considered, here it was properly decided by the judge as a matter of law. *See Lohrenz*, 787 P.2d at 1277. Assuming the doctrine is factually applicable and would have operated to raise the standard of care owed by the School, Section 155(7) specifically exempts the School from liability for injury arising under the theory of attractive nuisance. Thus, Section 155(7) stands as a bar to liability imposed by reason of a heightened standard of care owed by the School. The

**3.** The exemption for manufacturers' products liability now appears in § 155(25).

Oklahoma legislature has very clearly declared that the attractive nuisance doctrine shall not allow an injured child to recover from a political subdivision such as the School District here.

Determination of the "attractive nuisance" question, however, does not completely resolve the issue of whether summary judgment was proper. Even in the absence of the attractive nuisance doctrine, the School still had a duty to Kristin either as a trespasser, licensee or invitee. Different duties are owed depending on the status of the injured person. *See Good v. Whan*, 335 P.2d 911 (Okla.1959).

The School concedes that Kristin was a licensee. Brief of Appellee, at 7. Licensee status is accorded to those individuals who enter onto another's land for his or her own benefit, interest or pleasure under such circumstances that the landowner is presumed to be aware of the person's presence there. *Good*, 335 P.2d at 913, 914. An owner is charged with exercising ordinary care to avoid injuring a licensee, which is that degree of care a person of ordinary prudence would exercise under the facts and circumstances of the particular case. *Good* at 914. As a licensee, the School owed Kristin the duty to use ordinary care with regard to any defects or conditions in the nature of hidden dangers which were known or should have been known to the School. *Id.* at 913; *see also Henryetta Constr. Co. v. Harris*, 408 P.2d 522, 525 (Okla.1965).

Are there, then, facts sufficient to take Kristin's case to a jury in the absence of the attractive nuisance doctrine? We agree with the trial court that there are not. There is no assertion that the slide, its railings or underpinnings, or the surface beneath it, were in the nature of hidden dangers. It has been observed that the risk of falling from a slide is one which children regularly encounter and appreciate on a playground. *Alop v. Edgewood Falley*, 154 Ill.App.3d 482, 107 Ill.Dec. 355, 507 N.E.2d 19 (1987). There being no hidden dangers of which the common law required the Defendant to warn, the trial court correctly granted summary judgment.

Since no theory advanced by Plaintiff can survive the motion for summary judgment we need not address Defendant's fourth and final claim of exemption. The opinion of the Court of Appeals is vacated and the judgment of the District Court favoring the Defendant is affirmed.

HODGES, C.J., LAVENDER, V.C.J., and SIMMS, HARGRAVE and WATT, JJ., concur.

OPALA, J., concurs in judgment.

KAUGER, J., concurs in result.

ALMA WILSON, J., concurs in part, dissents in part.