Kelly Glen LYKINS and Sandra Irene Ly-kins, parents and next friends of Jeremia William Lykins, a minor, and Kelly Glen Lykins and Sandra Irene Lykins, individually, Plaintiffs–Appellants,

v.

SAINT FRANCIS HOSPITAL, INC., Defendant,

Michelle Boice, M.D., Daron Street, M.D., Bill Williams, M.D., Jerry Sims, M.D., and Alfonzo Arze, M.D., Defendants–Appellees.

No. 84147.

Supreme Court of Oklahoma.

Dec. 5, 1995.

David A. Tracy, Paul B. Naylor, Naylor & Williams, Tulsa, for Appellants.

Joseph A. Sharp, John H.T. Sheridan, Karen M. Grundy, Catherine L. Campbell, Kenneth E. Wagner, Timothy G. Best, Best, Sharp, Holden, Sheridan, Best & Sullivan, Tulsa, for Physician Appellees.

Howard K. Berry, Jr., Oklahoma City, for Amicus Curiae, Oklahoma Trial Lawyers Association.

Haven Tobias, Inona Jane Harness, Russell L. Hendrickson, Pierce, Couch, Hendrickson, Baysinger & Green, Oklahoma City, for Amicus Curiae, Oklahoma State Medical Association.

OPALA, Justice.

Two issues are dispositive of this controversy: (1) Does the Governmental Tort Claims Act [GTCA or Act][1] *shield faculty* and *resident* physicians—who are either teaching or participating in a medical education program at a *private hospital* under *an affiliation agreement with a state medical school—from tort liability* to a patient for negligence in providing medical or surgical services? and (2) Did the trial court err in giving summary judgment to the defendant physicians? We answer the *first* question in the *negative* and the *second* in the *affirmative.*

**I**

**THE ANATOMY OF LITIGATION**

Kelly Glen Lykins and Sandra Irene Lykins [mother] pressed individually and as next friends [parents or Lykins] a claim for their son's [Jeremia or son] injuries. The parents allege that the defendant physicians—Drs. Michelle Boice, Daron Street, Bill Williams, Alfonzo Arze and Jerry Sims—and the personnel at Saint Francis Hospital [St. Francis or hospital] negligently evaluated, tested, interpreted, treated and diagnosed the mother and her unborn fetus between September 27, 1990 and October 7, 1990 (the last 11 days of pregnancy). During this 11-day period, defendants Boice, Street, Williams and Arze were interns or *resident physicians* enrolled at the University of Oklahoma, Tulsa Medical College [OU Tulsa Medical College] and were participating in a graduate medical education program. When the Lykins' son was born defendant Sims

was the *attending faculty physician* on call at St. Francis.

On September 27, 1990 defendant Boice examined the mother at the OU Women's Clinic [Clinic] and referred her to St. Francis[2] for observation and testing. She was given a non-stress test and two urine screens for protein. Defendant Street, who was given a report of the mother's status, read the non-stress test. The mother was sent home that day. She returned to the Clinic the next day for a follow-up examination and ultrasound test and was seen again at the Clinic on October 1. On October 7 the mother presented herself to St. Francis, complaining of decreased fetal movement. Defendant Williams monitored her for several hours and then delivered the baby by cesarean section. Defendant Arze, the chief resident on call at St. Francis on October 7, neither saw the mother upon her admission at the hospital nor supervised her care. His only contact with her was when he closed the surgical site following the cesarean section. According to defendant Sims (the attending faculty physician), he was involved in the mother's care "in a supervisory and teaching capacity" and arrived in the operating room just as the delivery was being performed.

The parents brought this medical malpractice action against Drs. Boice, Street, Williams, Sims, and Arze as well as against St. Francis. Before the suit's commencement they had given no notice either to the physicians or to the State. Their petition alleges that the defendant physicians and hospital personnel negligently evaluated, tested, interpreted, treated and diagnosed the mother and her unborn fetus during the last 11 days of the pregnancy. According to the parents, their son is severely and permanently brain damaged as a result of the defendants' negligence. The defendant physicians pressed for summary judgment. Their quest rested on (a) immunity from tort liability conferred by the GTCA[3] because,

1. 51 O.S.1991 §§ 151 et seq.

2. The defendant physicians were working at St. Francis under an affiliation agreement between St. Francis and the OU Tulsa Medical College. The record is unclear whether during the period

in question Dr. Boice, who saw the mother at the OU Women's Clinic and later referred her to St. Francis, also worked at the defendant hospital.

3. *Supra* note 1.

when the medical services in question stood extended, they were either engaged in teaching duties or participating as students in a medical education program,[4] and (b) the parents' failure to comply with both the GTCA's notice-of-claim provisions [5] and with the 180-day time bar for a suit's commencement.[6] Without revealing the grounds upon which its decision was based, the trial court gave summary relief to the defendant physicians.[7] The parents appeal from the summary disposition for the physicians. Their cause was timely brought for review of an order appealable in advance of a *judgment.*[8]

4. *See* 51 O.S.Supp.1990 § 152(5), *infra* note 10.

5. The pertinent notice-of-claim provisions of the GTCA, 51 O.S.Supp.1988 § 156(A) and (B), *provided:*

"A. Any person having a claim against the state or a political subdivision within the scope of this act shall present a claim to the state or political subdivision for any appropriate relief including the award of money damages.

B. Claims against the state or a political subdivision are to be presented within ninety (90) days of the date the loss occurs. In the event a claim is presented following ninety (90) days after the loss occurs, but within one (1) year after the loss occurs, any judgment in a lawsuit arising from the act which is the subject of the claim shall be reduced by ten percent (10%). A claim against the state or political subdivision shall be forever barred unless notice thereof is presented within one (1) year after the loss occurs."

The 1992 amendment has no effect on this litigation.

6. The pertinent terms of 51 O.S.Supp.1989 § 157(B) are:

"B. No action for any cause arising under ... [the GTCA] shall be maintained unless valid notice has been given and the action is commenced within one hundred eighty (180) days after denial of the claim as set forth in this section...."

The 1994 amendment has no effect on this litigation.

7. The pertinent portions of the June 30, 1994 summary ruling (filed July 15, 1994) are:

" * * * The Court, having read the Briefs filed by the parties, having heard argument of counsel, and having reviewed the pleadings on file and being fully advised in the premises, finds that judgment should be, and hereby is, granted in favor of Defendants Boice, Street,

Williams, Sims and Arze and against the Plaintiffs pursuant to Rule 13, Rules of the District Courts of Oklahoma. Specifically, the Court finds that there is no substantial controversy as to any material fact, and that Defendants Boice, Street, Williams, Sims and Arze are entitled to judgment as a matter of law.

The Court further *finds that there is no just reason for delay* and directs the filing of this Journal Entry of Judgment extinguishing all claims against Defendants Boice, Street Williams, Sims and Arze.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that judgment be and hereby is rendered in the above-captioned case in favor of Defendants, Michelle Boice, M.D., Daron Street, M.D., Bill Williams, M.D., Jerry Sims, M.D. and Alfonzo Arze, M.D., and against the Plaintiffs. * * * " (Emphasis added.)

8. *No* adjudication of the claim against St. Francis appears in the record for this appeal. The terms of 12 O.S.1991 § 1006, the statute in force when summary relief was granted, governed appealability in actions with multiple parties and claims. Its standards required that, before an appeal may be prosecuted, everyone's claim in the action must stand decided, unless there be the trial judge's express authorization for an earlier appeal from some *severable* disposition of less than all the claims in the case. The district court's summary ruling, *supra* note 7, states there is "no just reason for delay[ing an immediate appeal]" and directs that summary disposition of the claim in the physicians' favor be entered at once (as a judgment). By amendments enacted in 1993 (Okl.Sess.L.1993, Ch. 351, §§ 23, 30, eff. Oct. 1, 1993) § 1006 was amended and recodified as 12 O.S.Supp.1993 § 994. *See Tinker Inv. & Mortg. v. Midwest City,* Okl., 873 P.2d 1029, 1034 (1994).

9. Okl., 890 P.2d 1329 (1994).

## II

## THE GTCA DOES *NOT* CONFER IMMUNITY UPON A PHYSICIAN FOR NEGLIGENCE OCCURRING IN THE DELIVERY OF HEALTH–CARE SERVICES

■ This court's pronouncement in *Anderson v. Eichner* [9] is dispositive of the argument pressed by the defendant physicians for the summary ruling's affirmance on the basis of GTCA-conferred immunity. *Anderson,* which construes the 1986 and 1989 versions of the GTCA, holds that faculty physicians engaged in teaching or in adminis-

trative duties (and resident physicians as well as interns participating in a medical education program) are employees of the state who, while on duty, are deemed acting within the scope of their employment *except when they are practising medicine.*[10] *In short, the purview of protection from liability created by the GTCA*[11] *does not encompass the practice of the healing art by providing medical or surgical services to patients.*[12]

*Anderson* applies with equal force to the statutory scheme in effect when the alleged injuries occurred in this case—between September 27 and October 7, 1990.[13] We know of no post–1989 amendment of the GTCA effective *before* the critical period in 1990 which would abrogate *Anderson's* teachings, in whole or in part, and none has been urged.

Under the authority and rationale of *Anderson,* if the summary ruling before us rests on GTCA-conferred immunity, it *cannot stand. We so hold and reverse.*

---

**III**

## NONAPPLICABILITY OF THE ACT'S NOTICE–OF–CLAIM AND COMMENCEMENT–TIME–BAR PROVISIONS

■ The defendant physicians argue that as *state employees* within the meaning of the GTCA,[14] they are subject to that Act's notice provisions. Compliance with the statutory notice command, they urge, is a "jurisdictional prerequisite" for the Lykins' tort claim which is also mandated by public policy. The teachings of *Anderson,*[15] they argue, do not abrogate a plaintiff's duty to give a notice of claim. The defendant physicians urge that the parents' failure to file with the State a notice of claim bars this tort action. In support of their position—that a plaintiff must give pre-suit notice in every situation in which a state employee is haled into court, regardless of whether the State ultimately is found accountable—the defendant physicians

---

**10.** The pertinent terms of 51 O.S.Supp.1990 § 152(5) (eff. May 30, 1990), which were in force when the claim arose, *provided:*

"5. "Employee" means any person who is authorized to act in behalf of a political subdivision or the state whether that person is acting on a permanent or temporary basis, with or without being compensated or on a full-time or part-time basis. Employee also includes all elected or appointed officers, members of governing bodies and other persons designated to act for an agency or political subdivision, but the term does not mean a person or other legal entity while acting in the capacity of an independent contractor or an employee of an independent contractor. For the purpose of this act, the following are employees of this state, regardless of the place in this state where duties as employees are performed:
a. *physicians* acting in an administrative capacity,
b. *resident physicians* and *resident interns participating in a graduate medical education program* of the University of Oklahoma Health Sciences Center or the College of Osteopathic Medicine of Oklahoma State University,
c. faculty members and staff of the University of Oklahoma Health Sciences Center and the College of Osteopathic Medicine of Oklahoma State University, while engaged in teaching duties.
Physician faculty members and staff of the University of Oklahoma Health Sciences Center and the College of Osteopathic Medi-

cine of Oklahoma State University *not acting in an administrative capacity or engaged in teaching duties are not employees or agents of the state.* However, in no event shall the state be held liable for the tortious conduct of any physician, resident physician or intern while practicing medicine or providing medical treatment to patients." (Emphasis added.)
The 1991, 1992, 1993 and 1994 *amendments have no effect on this litigation.*

**11.** 51 O.S.1991 §§ 151 et seq.

**12.** *Anderson, supra* note 9 at 1340–1341.

**13.** The defendant physicians urge that because *Anderson, supra* note 9, was pronounced December 6, 1994, it does not apply retroactively to the Lykins' claim, which arose in 1990. This argument is without merit. The court in *Anderson* consolidated for disposition by a single opinion two separate claims—one arising in 1986 (the *Anderson* claim) and another in 1989 (the *Bhat* claim). *Anderson's* construction of the 1989 version of the GTCA is applicable to the Lykins' 1990 claim, unless its teachings stood abrogated by legislation enacted before the claim arose (in 1990). We know of no such changes in the statutory liability scheme.

**14.** *See* 51 O.S.Supp.1990 § 152(5), *supra* note 10.

**15.** *Anderson, supra* note 9.

direct our attention to foreign jurisprudence.[16]

The Lykins counter this argument by urging that the defendant physicians are not immune from liability for medical treatment to a patient. The GTCA's notice-of-claim and time-bar provisions, they submit, do not inure to the benefit of the physicians in a medical malpractice case. Moreover, they urge that the terms of § 156(G) [17] *explicitly* support this conclusion. That section clearly provides that claims and suits against resident physicians and interns are to be made in accordance with Titles 12 [18] and 76.[19]

We are *not* persuaded by the argument advanced by the defendant physicians. This action clearly was intended to redress a private tort. The parents neither invoke the GTCA for imposition of liability nor attempt to cast any obligation on the State. They sued the defendant physicians *dehors* the Act on the theory that its immunity provisions were not available to protect them from civil responsibility. The parents' suit seeks *imposition of individual civil liability.* If the GTCA had been invoked, individual liability could not be foisted on any of the defendant physicians. This is so because as state employees they would be immune from accountability by the clear and unambiguous provisions in 51 O.S.1991 § 153(B).[20] We hence reject the notion that the Act's public-tort procedures apply to the parents' claim.

### SUMMARY

The purview of protection from liability affordable by the GTCA does not encompass the practice of the healing art by providing medical or surgical services to patients. The claim against the defendant physicians arose *from their treatment of the mother and her unborn fetus during the last stages of the pregnancy.*

The procedures of the GTCA are not applicable to this case because the parents' action was intended to redress a private tort—not to cast any obligation on the State. The Lykins look solely to the individual civil liability of the defendant physicians.

The trial court clearly erred in giving summary relief on either the interposed GTCA-conferred immunity or for noncompliance with the Act's procedures.

The trial court's summary disposition of the claim in favor of the defendant physicians is reversed and the cause is remanded for further proceedings not inconsistent with this pronouncement.

ALMA WILSON, C.J., KAUGER, V.C.J., and LAVENDER, SIMMS, HARGRAVE, OPALA and SUMMERS, JJ., concur.

HODGES and WATT, JJ., dissent.

WATT, Justice, with whom HODGES, Justice, joins, dissenting.

I dissent for the reasons set out in my dissent in *Anderson v. Eichner,* Okl., 890 P.2d 1329, 1341 (1994) (Watt, J., dissenting).

---

16. The defendant physicians cite: *Yotvat v. Roth,* 95 Wis.2d 357, 290 N.W.2d 524 (App.1980); *Doe v. Ellis,* 103 Wis.2d 581, 309 N.W.2d 375, 379 (App.1981); *Felder v. Casey,* 408 N.W.2d 19 (1987); *Kabwasa v. University of Utah,* 785 F.Supp. 1445, 1448 (D.Utah 1990), citing *Madsen v. Borthick,* 769 P.2d 245 (Utah 1989), and *Poole v. Clase,* 476 N.E.2d 828 (Ind.1985).

17. The terms of 51 O.S.Supp.1988 § 156(G) are:
"G. Claims and suits against resident physicians or interns shall be made in accordance with the provisions of Titles 12 and 76 of the Oklahoma Statutes."
The 1992 amendment has no effect on this litigation.

18. Title 12 regulates civil procedure.

19. Title 76 addresses itself to torts.

20. The pertinent terms of 51 O.S.Supp.1984 § 153(B)(eff. Oct. 1, 1985) are:

"B. The *liability of the state* or political subdivision *under this act shall be exclusive and in place of all other liability of the state,* a political subdivision or employee at common law or otherwise." (Emphasis supplied.)
*Fuller v. Odom,* Okl., 741 P.2d 449, 451–453 (1987).