2003 OK 57

**Joshua MORAN and Ruth Moran, as parents and next friends of D. M., a minor, Plaintiffs/Appellants,**

v.

**The CITY OF DEL CITY, a municipal corporation, Defendant/Appellee.**

No. 97,346.

Supreme Court of Oklahoma.

June 3, 2003.

As Corrected June 17, 2003.

Rehearing Denied Sept. 15, 2003.

Gary C. Bachman, Kenyatta R. Bethea, Holloway, Dobson & Bachman, Oklahoma City, OK, for Plaintiffs/Appellants.

Robert M. Anthony, Robert S. Lafferrandre, Pierce, Couch, Hendrickson, Baysinger & Green, Oklahoma City, OK, for Defendant/Appellee.

SUMMERS, J.

¶ 1 The primary issue on certiorari is whether an exemption from tort liability in the Governmental Tort Claims Act, 51 O.S. Supp.2000 § 151 *et seq.*, shields a political subdivision from liability based upon an allegation that the subdivision did not maintain its real property in a safe condition. We conclude that the "inspection powers or functions" exemption of the Governmental Tort Claims Act is not so broad as to include any act of a political subdivision that is designed to obtain knowledge of a condition or circumstance of its real property.

¶ 2 Two children were crossing a vacant lot when one fell into an uncovered sanitary sewer manhole. The other child went to an adjacent home to obtain help from adults. After one adult was unable to reach the outstretched arms of the child, another adult, Mr. Smart, used a rope to pull the child from the hole.

¶ 3 Mr. Smart described what he saw for the purpose of an affidavit used by Del City:

> I noticed that the manhole lid and rim were gone, and that the concrete column of the manhole had been smashed down so that it was almost flush with the ground.

A young boy (who was later identified to me as D.... M ....) was standing at the bottom of the manhole. He was chest-deep in sewer water, which smelled terrible.

This manhole is located in a vacant grassy lot that is owned and maintained by Del City. The lot is near athletic facilities used by children.

¶ 4 The parents of the child brought an action against the City of Del City. Del City filed a motion for summary judgment with a brief and affidavits. Del City argued that 1) the City was not negligent because the cause of the child's injuries was the intentional act of an unknown vandal, and 2) that the cause of action against the City was barred by the Governmental Tort Claims Act, (GTCA), 51 O.S.2001 § 151 *et seq.* Parents responded with their brief and affidavits. Del City responded and challenged affidavits submitted by the parents. The District Court granted Del City's motion for summary judgment without stating the specific grounds upon which the judgment was based.

██ ¶ 5 The parents appealed and urged as error that questions of fact existed so as to preclude summary judgment. They included under this alleged error various assertions relating to whether Del City violated certain standards of care. The Court of Civil Appeals concluded that "The competing summary judgment materials and affidavits demonstrate substantial controversy over material facts concerning Morans' cause of action based upon the City's negligence." The appellate court concluded that the City's defense of supervening cause [1] could not be the basis of summary judgment because of disputed facts on what the City knew, or should of known, about the condition of the manhole prior to the child's injuries. But the appel-

late court concluded that summary judgment was nevertheless proper, because the claim that the City negligently failed to inspect and maintain the manhole was barred by 51 O.S.Supp.2000 § 155(13) of the GTCA. The parents then sought certiorari in this Court, claiming that Del City failed to properly maintain the lot and that their claim for relief was not barred by the GTCA.

██ ¶ 6 Governmental immunity of a subdivision of the State is waived only to the extent and in the manner provided in the GTCA. *Salazar v. City of Oklahoma City,* 1999 OK 20, 976 P.2d 1056, 1066, *quoting,* 51 O.S.1991 § 152.1(B). A political subdivision shall be liable for loss resulting from its torts or the torts of employees committed within the scope of employment where private persons or entities would be liable under the laws of this state. *Walker v. City of Moore,* 1992 OK 73, 837 P.2d 876, 878, *citing,* 51 O.S.1991 § 153(A). However, the GTCA makes certain exemptions from this liability. 51 O.S.Supp.2000 § 155.[2] Included therein is the one urged by Del City and applied by the Court of Appeals.

§ 155. Exemptions from liability

The state or a political subdivision shall not be liable if a loss or claim results from:

... 13. Inspection powers or functions, including failure to make an inspection, review or approval, or making an inadequate or negligent inspection, review or approval of any property, real or personal, to determine whether the property complies with or violates any law or contains a hazard to health or safety, or fails to conform to a recognized standard;

51 O.S.Supp.2000 § 155(13).

On certiorari the parents make a distinction between inspection powers performed by Del

---

1. A supervening cause (or superseding cause) is a new, independent and efficient cause of the injury which was neither anticipated nor reasonably foreseeable. *Akin v. Missouri Pacific R. Co.,* 1998 OK 102, ¶ 38, 977 P.2d 1040, 1054–1055. A supervening cause that will insulate the original actor from liability is based upon a three-prong test where the cause is: (1) independent from the original negligent act, (2) adequate in itself to bring about the relevant injury, and (3) reasonably unforeseeable. *Akin,* 1998 OK 102, at n. 81, 977 P.2d 1040.

2. We have said that provisions of the GTCA applicable in a particular controversy are those in effect when the alleged injuries occurred. *Lykins v. Saint Francis Hosp., Inc.,* 1995 OK 135, 917 P.2d 1, 4. *Cf. Ingram v. State,* 1990 OK 2, 786 P.2d 77, 79, (analysis based upon the version of statute in effect when the injury occurred). The alleged injury in the case before us occurred on August 26, 2000. The version of § 155 in effect on that date is codified at 51 O.S.Supp.2000.

City and "maintenance of the vacant lot" owned by Del City. Parents are correct.

¶ 7 We first note that § 155(13) makes no reference to a political subdivision's maintenance of property. But § 155 does expressly include exemptions from liability for claims arising from the "maintenance" of a prison, jail, correctional facility, juvenile detention facility, or state highway system. 51 O.S.Supp.2000 § 155(24), (25), (30).[3] The interpretation of Del City is that the language of § 155(13): "failure to make an inspection, review or approval, or making an inadequate or negligent inspection" must include acts of maintenance that would, or should, result from inspections performed by a political subdivision.

¶ 8 A statute must be read to render every part operative and to avoid rendering parts thereof superfluous or useless. *In re Baby Girl L.*, 2002 OK 9, ¶ 21, 51 P.3d 544, 554. We construe the parts of the GTCA as consistent parts of a whole. *Pellegrino v. State ex rel. Cameron University ex rel. Board of Regents of State*, 2003 OK 2, ¶ 16, 63 P.3d 535, 540. Del City's construction of § 155(13) so as to include maintenance functions within the rubric of "inspection powers and functions" would make the "maintenance" provisions of § 155(24), (25), and (30) to be superfluous. Thus, the phrase "[i]nspection powers or functions" does not include the maintenance of property.

¶ 9 Del City relies upon *Brewer v. Independent School District No. 1*, 1993 OK 17, 848 P.2d 566, for the proposition that the "inspection exemption" from liability applies when a political subdivision fails to keep its property in a reasonably safe condition. In *Brewer* two of the allegations were that the school district negligently failed to keep its premises in a reasonably safe condition, and

that it failed to inspect its premises at proper intervals. *Id.* 848 P.2d at 570. We said that no liability could be predicated on the latter allegation relating to inspection because of § 155(13). *Id.* However, summary judgment on the former allegation of keeping the premises in a safe condition was **not** addressed in the opinion as barred by § 155(13). Instead, the parties and the Court addressed the condition of the property as it related to the injured person's status as a trespasser, licensee or invitee. *Id.* 848 P.2d at 571. We said

> Even in the absence of the attractive nuisance doctrine, **the School still had a duty to Kristin either as a trespasser, licensee or invitee.** Different duties are owed depending on the status of the injured person. *See Good v. Whan,* 335 P.2d 911 (Okla.1959).
>
> The School concedes that Kristin was a licensee. Brief of Appellee, at 7. Licensee status is accorded to those individuals who enter onto another's land for his or her own benefit, interest or pleasure under such circumstances that the landowner is presumed to be aware of the person's presence there. *Good,* 335 P.2d at 913, 914. An owner is charged with exercising ordinary care to avoid injuring a licensee, which is that degree of care a person of ordinary prudence would exercise under the facts and circumstances of the particular case. *Good* at 914. **As a licensee, the School owed Kristin the duty to use ordinary care with regard to any defects or conditions in the nature of hidden dangers which were known or should have been known to the School.** *Id.* at 913; see also *Henryetta Constr. Co. v. Harris,* 408 P.2d 522, 525 (Okla.1965).

*Brewer,* 848 P.2d at 571, emphasis added.

Thus, while we said that a claim couched in the language of a "failure to inspect" the

---

3. 51 O.S.Supp.2000 § 155(24), (25), (30), (emphasis added):

"24. Provision, equipping, operation or **maintenance** of any prison, jail or correctional facility, or injuries resulting from the parole or escape of a prisoner or injuries by a prisoner to any other prisoner; provided, however, this provision shall not apply to claims from individuals not in the custody of the Department of Corrections based on accidents involving motor vehicles owned or operated by the Department of Corrections;

25. Provision, equipping, operation or **maintenance** of any juvenile detention facility, or injuries resulting from the escape of a juvenile detainee, or injuries by a juvenile detainee to any other juvenile detainee; ...

30. **Maintenance** of the state highway system or any portion thereof unless the claimant presents evidence which establishes either that the state failed to warn of the unsafe condition or that the loss would not have occurred but for a negligent affirmative act of the state;"

premises was barred by § 155(13), we nevertheless considered potential liability based upon what the defendant knew or should have known about the premises. The political subdivision's premises liability in tort is not controlled solely by the "failure to inspect" exemption.

■ ¶ 10 Del City also relies upon an opinion of our Court of Civil Appeals that cites *Brewer, Reynolds v. Union Public Schools,* 1998 OK CIV APP 101, 976 P.2d 557. The *Reynolds* court concluded that "if the negligent maintenance is based on the failure to discover (inspect) or negligent inspection, then the school is exempt from liability." *Reynolds,* at ¶ 7, 976 P.2d at 558. That court reasoned that if the maintenance personnel should have discovered the dangerous condition and did not do so, then the plaintiff's claim was one for negligent inspection, and must fail due to § 155(13). But maintenance of property is not the same thing as inspection of property for § 155(13). A landowner may be liable for negligent maintenance of property irrespective of its inspection powers or functions. We now disapprove of *Reynolds* insofar as it would extend an inspection power or function in § 155(13) to include the simple act of a landowner in acquiring or not acquiring knowledge of the landowner's property.

■ ¶ 11 The concept of a person's duty to discover facts, and to anticipate what might occur under the circumstances, is involved, at some point, in all negligence cases. Negligence is sometimes defined by a person's duty to know certain facts and then guard against the consequences of them.

In negligence, the actor does not desire to bring about the consequences which follow, nor does he know that they are substantially certain to occur, or believe that they will. There is merely a risk of such consequences, sufficiently great **to lead a reasonable person in his position to anticipate them, and to guard against them**.... [Risk is defined] as a danger which is apparent, **or should be apparent,** to one in the position of the actor.

*Prosser and Keeton on the Law of Torts,* 169, 170 (5th ed.1984), (material omitted, explanation and emphasis added).

■ The negligence standard describes a duty of what "should be apparent" and is merely another way of saying what the person "should know" for a circumstance. Whether these facts are part of foreseeability, and are made a part of defining a particular duty, or as an element of causation,[4] is not important to the point that liability in many types of negligence cases involves an adjudication of what the defendant should have known.

One of the most difficult questions in connection with negligence is that of **what the actor may be required to know**.... He may be negligent in failing to look, or in failing to observe what is visible when he does look.

*Prosser and Keeton on the Law of Torts,* 182 (5th ed.1984), (material omitted and emphasis added).

This concept is found in the Restatement (Second) of Torts.

(2) The words "should know" are used throughout the Restatement of this Sub-

---

4. We have recognized that "foreseeability" is a term used in both defining a duty and as an element of proximate cause. *Delbrel v. Doenges Bros. Ford, Inc.,* 1996 OK 36, 913 P.2d 1318, 1322. We have used "foreseeability" to describe an element of proximate cause. *Dirickson v. Mings,* 1996 OK 2, 910 P.2d 1015, 1019. We have also used "foreseeability" in defining a duty, and as describing the zone of risk, i.e., "whether the conduct 'creates a generalized and foreseeable risk of harming others.'" *Iglehart v. Board of County Commissioners of Rogers County,* 2002 OK 76, ¶ 10, 60 P.3d 497, 502.

In this case we need not participate in the debate on the extent to which foreseeability is involved in either the duty or causation elements

of negligence. *See, e.g.,* Dorsaneo, *Judges, Juries, and Reviewing Courts,* 53 S.M.U. L.Rev., 1497, 1522–1525 (2000), (Dean Green argued that "foreseeability" should be limited to foreseeability of harm and determined by the finder of fact, as opposed to a theory of risks used by the trial judge to determine the existence of a duty). Dorsaneo, *Judges, Juries, and Reviewing Courts,* 53 S.M.U. L.Rev., 1497, 1522–1525 (2000), (Dean Green argued that "foreseeability" should be limited to foreseeability of harm and determined by the finder of fact, as opposed to a theory of risks used by the trial judge to determine the existence of a duty). *See also* Green, *Foreseeability in Negligence Law,* 61 Colum. L.Rev. 1497, 1417–1418 (1961).

ject to denote the fact that a person of reasonable prudence and intelligence or of superior intelligence of the actor would ascertain the fact in question in the performance of his duty to another, or would govern his conduct upon the assumption that such fact exists.

Restatement (Second) of Torts § 12(2).

This concept of creating liability based, in part, upon what the person, should know or should discover, is not foreign to our tort jurisprudence in general,[5] or tort claims against the State in particular.[6]

¶ 12 The exercise of ordinary care in many circumstances requires a person to be aware of facts relating to a thing or a particular circumstance. An exemption arising from an "inspection power or function" cannot include becoming aware of circumstances in a general sense without also bringing many types of negligence cases within the class of exempted claims. We thus decline to follow the *Reynolds* analysis for the meaning of "inspect" in § 155(13). Were we to hold otherwise we would put in doubt the viability of every GTCA claim based upon what a defendant should have known. Such an interpretation would expand the application § 155(13) to the point that many other provisions of § 155 would be superfluous.

¶ 13 Our conclusion is buttressed by the fact that § 155(13) says that a state or a political subdivision shall not be liable if a loss or claim results from inspection **powers** or **functions**. Governmental entities possess governmental powers and governmental functions. Section 155 refers to legislative functions, § 155(1); judicial, quasi-judicial, or prosecutorial functions, § 155(2); licensing powers or functions, § 155(12); and inspection powers or functions, § 155(13). 51 O.S.Supp.2000 § 155. The GTCA speaks in terms of a power or function, and not conduct to acquire knowledge.

¶ 14 A particular inspection power or function is not necessarily synonymous with a particular act of checking something out. For example, in *State v. Chickasha Milling Co.*, 1937 OK 477, 71 P.2d 981, in the context of a tax ferret proceeding, the State invoked Okla. Const. Art. 2 § 28,[7] and argued that it

---

5. *See, e.g., Strubhart v. Perry Memorial Hosp. Trust Authority*, 1995 OK 10, 903 P.2d 263, 273–274, (in certain circumstances a hospital exercising ordinary care **should know** of doctor's prior conduct); *McGee v. Alexander*, 2001 OK 78, ¶ 34, 37 P.3d 800, 808, (circumstantial evidence can be used to establish whether the vendor knew or **should have known** of the inebriate's visible or noticeable intoxication); *Lockhart v. Loosen*, 1997 OK 103, ¶ 13, 943 P.2d 1074, 1080, (a duty to warn another arises when a person knew or reasonably **should have known** of a dangerous condition); *Edwards v. Basel Pharmaceuticals*, 1997 OK 22, 933 P.2d 298, 300, (our products liability law generally requires a manufacturer to warn consumers of danger associated with the use of its product to the extent the manufacturer knew or **should have known** of the danger); *Ingram v. Wal Mart Stores, Inc.*, 1997 OK 11, 932 P.2d 1128, 1130, (summary judgment was reversed because reasonable persons could differ as to whether owner of real property knew or **should have known** of a dangerous condition, or whether the property was checked often enough by owner's employees); *Avard v. Leming*, 1994 OK 121, 889 P.2d 262, 267, (a homeowner is liable for injuries to an invitee if evidence shows that the homeowner knew or **should have known** of a dangerous condition on the premises and failed to warn an invitee); *Mistletoe Exp. Service, Inc. v. Culp*, 1959 OK 250, 353 P.2d 9, 16, (court relied upon Restatement, Torts, § 302, Comment n, and its standard of what a person knows, or

should know, about another, as such relates to a negligent hiring claim).

6. For example, in an action against a State hospital we said that a psychiatrist has a duty to exercise reasonable professional care when discharging a mental patient, and to take reasonable precautions to protect potential victims when in accordance with the standards of his of her profession the therapist knows, **or should know**, that a patient's dangerous propensities present an unreasonable risk of harm to others. *Wofford v. Eastern State Hospital*, 1990 OK 77, 795 P.2d 516, 520.

In *Ingram v. State*, 1990 OK 2, 786 P.2d 77, plaintiffs' action used a negligent entrustment theory, and they pled that defendants knew or "should have known" or "ought to have known" certain facts. *Ingram*, 786 P.2d at 80, 81. We reversed the dismissal order, and stated that "At a very minimum, she [plaintiff] has stated a claim for bodily injury that is founded on negligent entrustment of dangerous implements to the attacker, accomplished through unnamed State agents...." *Ingram*, 786 P.2d at 81.

7. Okla. Const. Art. 2 § 28: Corporate records, books and files.

The records, books, and files of all corporations shall be, at all times, liable and subject to the full visitorial and inquisitorial powers of the

was authorized to inspect certain portions of defendant's business records. We explained that an inspection of records as part of adversary proceedings where the State is a party did not apply to an inspection as a result of an exercise of the State's constitutional visitorial [8] powers. *Id.* 985–986.

¶ 15 We thus view § 155(13) as describing the exercise of a particular governmental "power" or "function" and not a simple familiarization with one's own property. Governmental entities exercise inspection powers and functions in many contexts, but no particular governmental inspection power or function is at issue in this case. We thus vacate that portion of the opinion of the Court of Civil Appeals holding that § 155(13) applies in this case to exempt Del City from liability.

¶ 16 On certiorari Del City also argues that § 155(6) exempts it from liability. Section 155(6) creates an exemption if the loss or claim results from "6. Civil disobedience, riot, insurrection or rebellion or the failure to provide, or the method of providing, police, law enforcement or fire protection; . . . ." 51 O.S.Supp.2000 § 155(6). Del City states that one allegation is that it failed to investigate reports of vandalism involving the removal of manhole covers and thereby created a dangerous condition. Del City argues that the § 155(6) exemption is known as the "negligent investigation exemption" and that the claim against Del City is based upon an allegation of negligent investigation of criminal activity.

¶ 17 We have explained this exemption as follows:

Section 155(6) of the GTCA affords immunity to a governmental subdivision for claims that result from "the failure to provide, or the method of providing," police, law enforcement or fire protection." "Protection" serves as the key word for the textual analysis of the critical sentence quoted here from subsection 6. The exemp-

tion in that subsection is invocable when the tort arises while a municipality is rendering services that fall into some category of police protection, law enforcement protection or fire protection. In short, a governmental subdivision is not liable for deficiency of protective services extended by its police, law enforcement or fire fighting components.

*Salazar v. City of Oklahoma City,* 1999 OK 20, ¶ 26, 976 P.2d 1056, 1066, notes omitted. In *Salazar* we distinguished between providing protective services and carrying out law enforcement duties. *Id.* at ¶ 27, 976 P.2d at 1066. The exemption from liability applied to the former and not the latter.

¶ 18 The allegation against Del City is not that Del City was negligent in providing protection from criminal activity. Rather, it is an allegation that Del City, as an owner of real property, was a victim of wrongful activity, and then did not reasonably remedy an unsafe condition on its property that resulted from the wrongful activity. Del City's reliance upon § 155(6) is misplaced.

¶ 19 The Court of Civil Appeals (COCA) decided two issues in this matter. First, it decided that the City's defense of supervening cause could not be resolved by summary judgment procedure because of the existence of a substantial controversy over material facts. This issue was not presented on certiorari, and we leave undisturbed that portion of the opinion by the Court of Civil Appeals.

¶ 20 The Court of Civil Appeals also decided that the exemption of 51 O.S.Supp.2000 § 155(13) applied. We have concluded on certiorari that § 155(13) does not apply, and we accordingly vacate that portion of the COCA opinion. Because the COCA opinion was released for publication and we have vacated those portions of that opinion on the immunity issue, we also withdraw the COCA opinion from publication.

¶ 21 The judgment of the District Court granting summary judgment to Del City is

State, notwithstanding the immunities and privileges in this Bill of Rights secured to the persons, inhabitants, and citizens thereof.

**8.** Inspection of corporate records pursuant to visitorial power is a public right, existing in the

State, and for the purpose of examining into the conduct of the corporation with a view to keeping it within its legal powers. *Gilmer Oil Co. v. Ross,* 1936 OK 548, 62 P.2d 76, 78–79.

reversed, and the matter is remanded to that court for further proceedings consistent with this opinion, and consistent with the opinion of the COCA to the extent that it decided that a controversy of facts precluded summary judgment on Del City's defense of supervening cause.

¶ 22 WATT, C.J., OPALA, V.C.J., HODGES, KAUGER, and BOUDREAU, JJ., concur.

¶ 23 LAVENDER, HARGRAVE, and WINCHESTER, JJ., dissent.