No. 61,056

BERTHA DRASKOWICH, *Appellee,* v. CITY OF KANSAS CITY, KANSAS, and BOARD OF PUBLIC UTILITIES OF THE CITY OF KANSAS CITY, KANSAS, *Appellants.*

(750 P.2d 411)

Opinion filed February 19, 1988.

*Maurice J. Ryan,* assistant city attorney, argued the cause and was on the brief for appellants.

*Merle E. Parks,* of Kansas City, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

PRAGER, C.J.: This is an action to recover for damage to an automobile caused by icy roadway conditions. The plaintiff car owner, Bertha Draskowich, sued the City of Kansas City and its Board of Public Utilities on the theory that city employees were negligent in failing to warn automobile drivers about the presence of ice on the city street. The City filed a counterclaim for damage to a light pole which was struck by the plaintiff's vehicle. The case was tried to the court sitting without a jury. The trial court entered judgment in favor of the plaintiff, and the defendants appealed.

The facts in the case were not greatly in dispute and essentially are as follows: On November 20, 1984, the Board of Public Utilities (BPU) responded to a water main break near 60th Street and State Avenue in Kansas City, Kansas. The first BPU official arrived at 7:55 p.m. He noticed that water was leaking onto the eastbound lanes of traffic and flowing downhill. The water was repeatedly splashed onto the westbound lanes of traffic by moving vehicles. BPU employees began work to repair the leak.

Three BPU trucks stopped at the site and set up barricades, flashing lights, and traffic cones in the eastbound lanes. Police officers were also at the scene. The BPU employees turned off the water at 9:00 p.m. The employees then set up their equipment and turned the water back on to search for the leak. Once the leak was found, crews began tearing up the street. The weather was cool that evening; however, the temperature was above freezing. Because the temperature was dropping, the BPU employees called the City for a sand truck. The first request was made at 9:20 p.m., but no sand truck responded. A second call was made at 10 p.m., a third at 11 p.m., and a fourth at 11:45 p.m. A truck finally arrived at 12:15 a.m. Ice had formed in the westbound lanes by the time the accident occurred at 11:15 p.m.

The plaintiff, Bertha Draskowich, was driving home that evening westbound on State Avenue within the posted speed limit. She noticed two trucks in the eastbound lanes and slowed down. The plaintiff testified that she slowed to about 15 to 20 miles per hour. Other witnesses testified that plaintiff was traveling at a greater speed. There was no evidence that she was exceeding the speed limit.

According to plaintiff, when her car hit the ice, she lost control. Her car swerved in the road and then ran over the curb. She traveled across the eastbound lanes of traffic and down an embankment. Thereafter, her car struck a light pole, traveled through brush, hit a house, and came to rest against a tree. There was a legitimate question of fact as to whose negligence caused the accident.

There was evidence offered to support the plaintiff's theory that the proximate cause of the accident was the failure of the city employees to give an adequate warning of the presence of ice to traffic in the westbound lanes. These facts were undisputed:

(1) There was a water main break near the intersection of 60th Street and State Avenue.

(2) Board of Public Utilities employees arrived at the scene and turned the water off at 9:00 p.m.

(3) The employees of BPU turned the water back on to locate the leak at 9:30 p.m.

(4) Telephone calls were made for a sand truck at 9:30, 10:00, 11:00, and 11:45 p.m. A sand truck finally arrived at 12:15 a.m., about an hour after plaintiff's accident occurred.

(5) The water was turned off by the BPU employees at 10:35 p.m.

(6) Ice had formed on the road by 11:00 p.m., and the BPU employees present knew it.

(7) Although barricades with flashing lights were placed to warn travelers on the eastbound lanes, no warnings or barricades were placed to warn vehicles in the westbound lanes.

(8) At least one accident occurred before plaintiff's accident.

(9) Other accidents occurred after the plaintiff's accident.

(10) A police officer testified that he indicated in his report that there was not an adequate warning marker in place to warn the plaintiff of the icy condition prior to her hitting the ice. The officer testified, in substance, that the City should have had somebody in the westbound lanes advising travelers of the icy conditions.

The parties stipulated to the amount of damage to the plaintiff's car ($3,250), and the damage to the City's light pole ($547.25). At the close of the evidence, the court entered judgment in favor of the plaintiff in the amount of $3,250. The defendants appealed.

The first issue raised on the appeal is whether the trial court erred in excluding certain evidence pertaining to defendants' defense of waiver. Prior to the trial, plaintiff's insurance carrier entered into negotiations with the defendants. Apparently, after much discussion, a representative of plaintiff's insurance carrier left a telephone message for an assistant city attorney. According to the proffered testimony of the assistant city attorney, she wrote on a message slip an indication that she and the representative of plaintiff's insurance company agreed to just forget their claims and call it quits, which indicated some type of understanding between her and the plaintiff's insurance adjuster. The trial court rejected the proffered testimony on the basis it was simply evidence of negotiations which was not sufficient to establish an actual settlement of the case. The law in this state is that offers of settlement and pretrial settlement negotiations are generally inadmissible. *Ettus v. Orkin Exterminating Co.*, 233 Kan. 555, Syl. ¶ 9, 665 P.2d 730 (1983). An exception exists if the offer contains admissions of fact. *Ettus v. Orkin Exterminating Co.*,

233 Kan. 555, Syl. ¶ 10. The rule is codified in K.S.A. 60-453, which provides:

"Evidence that a person has accepted or offered or promised to accept a sum of money or any other thing, act or service in satisfaction of a claim, is inadmissible to prove the invalidity of the claim or any part of it."

Defendants presented this evidence to show that the plaintiff had waived her claim. We hold that the trial court did not commit error in rejecting this testimony. The defendants did not plead either an accord and satisfaction or a compromise and settlement as a defense. It is apparent from the plaintiff's actions that she did not intend to give up her claim. The defendants' proffer showed no signed agreement by plaintiff. The documentation was a phone message slip. Absent express final agreement by the parties, any negotiations must be considered preliminary and as such they are inadmissible. There was no evidence proffered to show that the plaintiff, Bertha Draskowich, or her attorney entered into a final compromise or settlement of the claim. We hold that the trial court did not err in excluding this testimony.

Defendants next maintain that the trial court erred in limiting certain testimony of Donald Kerns, the BPU superintendent of water operations. Plaintiff placed Mr. Kerns on the stand where he testified that he arrived at the scene about 7:55 p.m. He testified that the police were already there and there was some discussion with the police about closing down State Avenue. According to Kerns, he informed the police officers that he could have a crew there shortly and that if they could keep the traffic off of the north side of the eastbound lanes it could be corrected. The water was leaking at that time. The majority of the water was in the eastbound lanes but there was some getting into the westbound lanes. He did not personally call the sand truck. He only knew about calling the sand truck from information received from the crew. Mr. Kerns stated that it had been predicted that the temperature was going to drop below freezing and that sand would be put down to help the traffic. He testified that four telephone calls were made for a sand truck prior to the accident. The accident occurred at about 11:15 p.m. and there were several other accidents at about that time. The street was not closed down. The sand truck was called again after the accident. The

truck finally arrived at 12:15 a.m. It took about three hours for the sand truck to arrive from the first time it was requested.

On cross-examination, counsel for the defendants asked Mr. Kerns what the usual City response was following a BPU request for a sand truck. He responded that the City will not dispatch a sand truck or highway trucks to the area until the water is completely shut off. The plaintiff objected and the trial court sustained the objection. Counsel for the defendants informed the court if Mr. Kerns were allowed to continue to testify, he would have testified from his experience that a telephone call for a sand truck is not heeded until the water is shut off because if not, the water would simply wash away the sand, making the sand entirely ineffective. The other evidence proffered was that the water turned to ice shortly before the accident happened.

Defendants maintain that the proffered testimony was admissible as proof of habit or custom under K.S.A. 60-449, which states:

"Evidence of habit or custom is relevant to an issue of behavior on a specified occasion, but is admissible on that issue only as tending to prove that the behavior on such occasion conformed to the habit or custom."

Defendants sought to introduce Kerns' testimony to show that the City's behavior on the night of the accident was customary and, therefore, not negligent. Counsel neither proffered nor elicited testimony concerning the number of times Kerns had called for a sand truck. We hold that it was not prejudicial error to exclude Kerns' testimony. There was no dispute in the evidence as to what the City employees present actually did or did not do on the evening of the accident. The only fact issue was whether the employees of the City and BPU were negligent in what they actually did. We hold that the ruling of the trial court did not constitute prejudicial error.

The third point raised on the appeal is that the trial court erred in failing to apply the provisions of the Kansas Tort Claims Act (K.S.A. 75-6101 *et seq.*) so as to bar plaintiff's recovery. K.S.A. 75-6104 sets forth the exception from liability of a governmental entity and provides in part as follows:

"**75-6104. Same; exceptions from liability.** A governmental entity or an employer acting within the scope of the employee's employment shall not be liable for damages resulting from:

. . . .

"(d) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion be abused;

. . . .

"(g) the malfunction, destruction or unauthorized removal of any traffic or road sign, signal or warning device unless it is not corrected by the governmental entity responsible within a reasonable time after actual or constructive notice of such malfunction, destruction or removal. Nothing herein shall give rise to liability arising from the act or omission of any governmental entity in placing or moving any of the above signs, signals or warning devices when such placement or removal is the result of a discretionary act of the governmental entity;

. . . .

"(k) snow or ice conditions or other temporary or natural conditions on any public way or other public place due to weather conditions, unless the condition is affirmatively caused by the negligent act of the governmental entity; . . .

"The enumeration of exceptions to liability in this section shall not be construed to be exclusive nor as legislative intent to waive immunity from liability in the performance or failure to perform any other act or function of a discretionary nature."

The defendants argue, in substance, that the placing of flashing signs to warn traffic in the westbound lanes at the time of the accident was a discretionary function or duty on the part of the employees of the City and BPU and, therefore, the City and BPU are exempt from liability. The defendants also argue that the decision whether to isolate the street to traffic upon locating the leak or to permit the traffic to operate was a discretionary function and that the decision whether additional warning devices were to be placed to warn westbound traffic was a discretionary function. The defendants also argue that the City and BPU are immune under K.S.A. 75-6104(k) because the icy condition was not affirmatively caused by the negligent act of the governmental entity. We agree with the plaintiff that the trial court did not err in holding that these exceptions under K.S.A. 75-6104 were not applicable under the factual circumstances in this case.

This issue is controlled by a series of cases handed down by this court which recognize that a city has an obligation to keep its streets in a reasonably safe condition, which duty is mandatory. In *Schmeck v. City of Shawnee*, 232 Kan. 11, 651 P.2d 585 (1982), the court stated in Syllabus ¶ 2:

"A city's common-law duty to keep its streets reasonably safe is mandatory, and the city has no right or discretion to avoid this duty."

Syllabus ¶ 3 states:

"In a suit alleging a city breached its common law duty to keep its streets reasonably safe the question of whether a street defect existed is ordinarily a question of fact for the jury."

More recently, in *Toumberlin v. Haas*, 236 Kan. 138, 689 P.2d 808 (1984), this court held that, although the statutory liability of the state, counties, and townships for defects in highways was repealed by the Tort Claims Act, a duty to maintain the highways remains under the general liability for negligence created by the Act. The scope of that duty is to be determined on a case-by-case basis.

In *Trout v. Koss Constr. Co.*, 240 Kan. 86, 92, 727 P.2d 450 (1986), the opinion discusses whether there would be liability on the part of KDOT where a motorist encounters glare ice on an exit ramp on an interstate highway. The court indicated that, under certain circumstances, the Kansas Department of Transportation could be held responsible for resulting damages. Syllabus ¶ 6 states, without equivocation, that the responsibility for the duty of a govermental entity to maintain its highways in a reasonably safe condition may not be delegated to another.

In *Taylor v. Reno County*, 242 Kan. 307, 747 P.2d 100 (1987), an action was brought for wrongful death and personal injuries resulting from an automobile accident caused by the accumulation of ice on a county bridge. The county claimed it was immune from liability under K.S.A. 75-6104(k), which states, in substance, that a governmental agency shall not be liable for damages resulting from snow or icy conditions resulting from accumulation of ice due to natural weather conditions unless the condition is affirmatively caused by the governmental agency. The accident occurred on a county bridge. Rain had started falling earlier in the evening and, although it did not freeze on the roads or highways, icing and slippery conditions did develop on bridges and overpasses. The air temperature stayed about 25 degrees Fahrenheit all evening. At 8:37 p.m., the county was advised that the bridge and overpasses were getting extremely slick. The county responded that sand and salt would be applied starting at 5:00 the next morning. At 10:57 p.m., although the road was not slick, the bridge was a sheet of ice and plaintiff's vehicle slid out of control and collided with an oncoming vehicle. The court in *Taylor* held that K.S.A. 75-6401(k) provided

immunity to the county from the claims asserted by the plaintiff. The court held that this case was a classic example of the type of cases which falls within the snow and ice exception. Because the accumulation of ice upon the bridge was not due to affirmative negligent acts of the county, the county was immune. There were no negligent acts of the county which caused ice to form on the bridge.

The factual situation in the present case is quite different. The ice on the street where the accident occurred was not the product of natural weather conditions but was due to a break in the water line. It was undisputed that BPU employees turned the water off at 9:00 p.m. The ice formed after the employees turned the water back on in order to locate and repair the leak. The employees of BPU and the City knew there was ice in the road and knew that it was dangerous for vehicles to travel on it. Barricades and flashing lights were placed in the eastbound lanes, but no warnings of any kind were placed in the westbound lanes. As noted heretofore, an accident occurred prior to the plaintiff's accident and other accidents occurred afterward. Under these factual circumstances, we hold that affirmative acts of the City caused the accident. The ice on the highway was not the result of natural weather conditions, but developed only after the BPU employees turned the water back on and allowed the street to be flooded. We hold that the exceptions contained in K.S.A. 75-6104 do not apply in this case. The City simply failed to take acts reasonably necessary for the protection of the travelers in the westbound lanes. The question of negligence was an issue of fact to be determined by the trier of fact.

The final point raised by the defendants on the appeal is that the trial court erred in finding that the sole proximate cause of the accident was the negligence of the defendants. We hold this issue to be without merit. The question of causal negligence was a fact issue which the trial court had the obligation to determine. An appellate court has no right to substitute its judgment on issues of fact for that of the trial court. The City's own witness, a police officer, testified that there should have been markers and warnings in the westbound lanes to warn travelers. The City had plenty of time to respond to the requests to send a sand truck. The plaintiff was travelling through the area in a normal fashion

and she lost control when her car started to spin on the ice. There was substantial competent evidence to support the finding of the trial court. We hold that the trial court did not err in finding that the sole proximate cause of the accident was the negligence of the defendants.

The judgment of the district court is affirmed.