Floyd TURNER, as personal representative of the Estate of Whalen James Turner, Deceased, Appellant,

v.

The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF GRADY, Appellee,

and

The Oklahoma Department of Transportation, and the Oklahoma Corporation Commission, Defendants.

No. 79464.

Court of Appeals of Oklahoma,
Division No. 1.

July 20, 1993.

Jerry Kirksey, Roy C. Dickinsen, Edmond, for appellant.

Michael R. Chaffin, Chickasha, for appellee.

### *MEMORANDUM OPINION*

HANSEN, Chief Judge:

In this wrongful death action, Appellant (Turner) seeks review of summary judgment in favor of Appellee (County).[1] Turner brought the action as personal representative of the estate of his son, who was killed in a vehicular-train accident while driving on a road in Grady County.

The petition alleged County was negligent in failing to act to remedy the "ultra-hazardous condition" of the railroad crossing, in failing to properly mark the crossing, in failing to eliminate the "death trap" nature of the crossing in violation of 69

---

1. Defendants Department of Transportation and Corporation Commission were dismissed from this action prior to summary judgment and are not parties to the appeal. Turner had previously settled his action against the railroad involved in the accident.

O.S.1981 § 1501[2], in failing to reduce the speed limit at the crossing for vehicles and trains, and in failing to maintain the crossing unobstructed by trees, brush and debris.

County answered Turner's petition, and after discovery between the parties, County moved for summary judgment. County argued if it had a duty in this matter, it extended only to providing signs at the crossing, and that Turner had admitted in his petition there were crossbuck warning signs in place. County further argued it was exempt from liability under the Oklahoma Governmental Tort Claims Act (Tort Claims Act).[3]

In his response to County's motion for summary judgment, Turner argued County did owe a duty to place "suitable signs" at the crossing, and that the question of what was suitable was one for the trier of fact. Turner also responded to County's claimed exemption from liability under the Tort Claims Act.

In granting summary judgment for County, the trial court specifically found, among other things, that County owed no further duty than to provide the crossbuck warning signs which were in place at the time of the accident. The trial court further found the Tort Claims act protected County from liability.

Within ten days from the date the order granting summary judgment was filed, Turner filed a motion to reconsider the order. Turner attached the affidavit of a Becky McDonald in support of his motion. He contended facts within the affidavit provided an "independent basis for liability" under the Tort Claims Act. Turner had not presented Ms. McDonald's affidavit prior to the trial court's order granting summary judgment. Turner brings this appeal from the trial court's denial of his motion to reconsider.

In his first allegation of error, Turner reiterated his argument made below that County owed a duty of care to place "suitable signs" at the crossing. Turner bases his contention on 66 O.S.1981 §§ 124 and 125, which, respectively, require railroads to erect "suitable signs of caution" at crossings with highways, and, if the railroad refuses or neglects to erect such signs after thirty days notice by the responsible board of county commissioners, require the county to erect the signs.

As his next contention, Turner argues County is not shielded from liability by the "discretionary function" exemption found in the Tort Claims Act[4] because County's duty under 66 O.S.1981 § 125 is mandatory, not discretionary.

Presuming, without deciding, that Turner is correct in his first two contentions, we nonetheless find, contrary to Turner's third contention, that County is exempt from liability under other provisions of the Tort Claims Act. Turner does not controvert County is a political subdivision covered by the Act.[5]

The Tort Claims Act is the exclusive remedy against a governmental entity in Oklahoma, and our Supreme Court has determined the Legislature, by the Act, specifically abrogated any previously existing common law or statutory right of re-

---

2. Apparent reference to 69 O.S.1981 § 1502.1, which directs expenditure of $1,000,000.00 per fiscal year to eliminate "death traps".

3. 51 O.S.Supp.1984 §§ 151 et seq.

4. 51 O.S.Supp.1988 § 155(5) provides:
   The state or a political subdivision shall not be liable if a loss or claims results from:

   .  .  .  .  .

   (5) Performance of or failure to exercise or perform any act or service which is in the discretion of the state or political subdivision or its employees;

5. See 51 O.S.1988 Supp. § 152(8)(c).

covery for torts coming within the Act. *Fuller v. Odom,* 741 P.2d 449 (Okla.1987); also see 51 O.S.Supp.1984 § 153(B). Thus, the right of recovery in tort against a political subdivision must be found within the boundaries defined by the Act. *Fuller v. Odom,* at 452.

■ In enacting the Tort Claims Act, the Legislature both adopted the doctrine of sovereign immunity, and waived that immunity "to the extent and in the manner provided in" the Act.[6] In limiting the waiver of sovereign immunity, the Legislature has expressly and specifically codified a variety of exemptions from liability, mandating that the state or a political subdivision shall not be liable if a loss or claim results from, among other things:

> Absence, condition, location or malfunction of any traffic or road sign, signal, or warning device unless the absence, condition, location or malfunction is not corrected by the state or political subdivision responsible within a reasonable time after actual or constructive notice.... *Nothing herein shall give rise to liability arising from the failure of the state or any political subdivision to initially place any of the above signs, signals or warning devices.* (emphasis added).

51 O.S.Supp.1988 § 155(15).

In the evidentiary material attached by County in support of its motion for summary judgment is the affidavit of Ealmer Klippel, a county commissioner for County. Commissioner Klippel notes in the affidavit dated December 3, 1991, that County "has never erected or placed any sign, signal or warning device at the train crossing" where the accident happened. That assertion is uncontroverted by evidentiary material before the trail court at the time of summary judgment.

In support of his opposition to County's motion for summary judgment, Turner at-

tached a November 12, 1987, letter from Klippel to the responsible railroad. In the letter, Klippel noted the crossing had become extremely hazardous because the county road had been upgraded, and asked the railroad's advice on how to get a "warning type signal" placed at the location.

The record does not reveal what, if any, sign, signal or warning device was at the crossing at the time of Klippel's 1987 letter, only that a "crossbuck" sign was in place at the time of the accident in August 1989. In any event, even if County was obligated to act upon the railroad's refusal or neglect to install a more effective warning system after Klippel's 1987 letter, County's action would have been an initial placement such as was contemplated by the Legislature's proviso in § 155(15).

That the Legislature intended to preclude claims arising from failure of such initial placement is further supported by the amendment to § 155(15) in 1988.[7] That amendment deleted the phrase, "when such failure, alteration or change is the result of a discretionary act of the state or political subdivision", which came immediately after our emphasized language in § 155(15) above.[8]

By this amendment, the Legislature expressed its intent to protect the governmental entity even where the failure to act would have been ministerial, not discretionary, and ordinarily not exempted. See, *Nguyen v. State,* 788 P.2d 962 (Okla.1990). If County had a statutory duty to take some action regarding safety markings, signs, signals or warning devices at the crossing where the accident occurred, and failed to do so, it was shielded from liability under the facts here.

Finally, Turner contends summary judgment should not have been granted because there was disputed evidence before

---

**6.** 51 O.S.Supp.1984 § 152.1.

**7.** Laws 1988, c. 241, § 2, eff. Nov. 1, 1988.

**8.** Both Appellant and Appellee erroneously quote and discuss § 155(15) in its pre–1988 amendment form, including the deleted phrase.

the trial court that County had placed an advance warning sign at the crossing some time before the accident; that the warning sign had fallen or been knocked down; and that County had not replaced the sign after repeated requests to do so.

Turner's purported evidence comes from the McDonald affidavit submitted to the trial court with Turner's motion to reconsider. After summary judgment, the party opposing the motion cannot on appeal rely on any evidentiary material that was not before the trial court at the time summary judgment was rendered. *Frey v. Independence Fire and Casualty Co.*, 698 P.2d 17 (Okla.1985).

Further, the record reflects Turner listed Ms. McDonald as a potential witness more than two months before filing his response to County's motion for summary judgment. Turner provides nothing to establish he could not have, through the exercise of due diligence, obtained the McDonald affidavit and provided it to the trial court prior to the court's determination on summary judgment. *R.J.B. Gas Pipeline Co. v. Colorado Interstate Gas Co.*, 813 P.2d 14 (Okla.App.1990).

We find the trial court did not err, as a matter of law, in granting summary judgment in favor of County, and that the trial court did not abuse its discretion in denying Turner's motion to reconsider. The judgment of the trail court is AFFIRMED.

JONES, P.J., and ADAMS, J., concur.

