**David HOLT, Personal Representative for the Estates of James William Holt and Joan Walker Holt, Deceased Appellant,**

v.

**STATE of Oklahoma, ex rel. OKLAHOMA DEPARTMENT OF TRANSPORTATION, Appellee.**

No. 87401.

Court of Appeals of Oklahoma, Division No. 1.

Aug. 20, 1996.

Certiorari Denied Oct. 23, 1996.

Michael D. Parks, McAlester, for Appellant.

James M. Robinson, Oklahoma City, for Appellee.

### OPINION

HANSEN, Presiding Judge:

In this wrongful death action pursuant to the Governmental Tort Claims Act (the Act), 51 O.S.1991 §§ 151 *et seq.*, Appellant, David Holt (Holt), seeks review of the trial court's order granting summary judgment in favor of Appellee, State of Oklahoma (State). The appeal is pursuant to the accelerated procedure under Rule 1.203, Rules of Appellate Procedure in Civil Cases, 12 O.S.Supp.1993, Ch. 15, App. 2.

Holt brought this action as Personal Representative of the estates of his parents, James Holt and Joan Holt. James and Joan Holt were killed in a vehicular accident where state highway 151 crosses over the Keystone Dam in Tulsa county. The parties agree the accident happened when the driver of an oncoming car lost control on an icy patch, crossed the centerline, and struck the Holts' car head on. The Holts' car was estimated to have been traveling at 50 miles per hour and the other car at 55 miles per hour.

The parties also agree the likely source of the ice on the roadway was mist formed when water was released through the flood gate of the dam. The temperature was below freezing on the morning of the accident, but there had been no precipitation in the area for 24 hours. There were signs located at each end of the dam warning motorists to "Watch for Ice on Bridge". Remote controlled amber flashing lights mounted on top of each sign were not operating at the time of the accident. None of State's employees was aware the Corps of Engineers was to release water through the dam on the day of the accident.

Holt alleged the accident, and decedents' deaths, were proximately caused by State's negligence in failing to [a] activate the amber flashing lights on the signs warning motorists to watch for ice, [b] warn motorists of the dangerous condition of the ice on the bridge, and [c] establish a system with the Corps of Engineers whereby the Corps would notify State when water was to be released through the dam during the time of the year ice could form on the roadway.

State moved for summary judgment, arguing it was immune from civil liability, that it had no duty to warn, and that there was no causal connection between the alleged breaches of duty and the claimed losses. State acknowledged sovereign immunity for torts committed by its employees had been generally waived by 51 O.S.1991 § 152.1, but asserted it retained immunity under the facts here in accordance with the exemptions from waiver found in 51 O.S.1991 §§ 155(8) and 155(15). These sections are part of the Act.

Subsections 155(8) and (15) provide, in relevant part, that State shall not be liable if a loss results from:

(8) Snow or ice conditions or temporary or natural conditions on any public way or other public place due to weather condi-

tions, unless the condition is affirmatively caused by the negligent act of the state . . .;

(15) Absence, condition, location or malfunction of any traffic or road sign, signal or warning device unless the absence, condition, location or malfunction is not corrected by the state or political subdivision responsible within a reasonable time after actual or constructive notice or the removal or destruction of such signs, signals or warning devices by third parties, action of weather elements or as a result of traffic collision except on failure of the state or political subdivision to correct the same within a reasonable time after actual or constructive notice. Nothing herein shall give rise to liability arising from the failure of the state or any political subdivision to initially place any of the above signs, signals or warning devices. . . .

In its brief supporting its motion for summary judgment, State also argued it had no duty to further warn drivers of ice on the roadway because [1] the ice was an open and obvious condition, [2] there were signs present warning of the possible danger, and [3] State had no notice of the danger superior to that of the driver of the car which struck the Holts' car. Finally, State argued reasonable persons could not conclude, as Holt asserted in his Petition, that had the amber lights been flashing, the collision would not have occurred. Thus, State contends no causal connections can be shown between its alleged breach and the Holts' death.

Holt argued in his brief opposing State's motion for summary judgment that State was not immune from suit under 51 O.S.1991 § 155(8) because the ice on the road was the result of a man made condition, not *due to weather conditions* as necessary in accordance with § 155(8). Similarly, Holt argued State is not exempt from liability pursuant to 51 O.S.1991 § 155(15) because he is not claiming negligence for the absence, condition, location or malfunction of any traffic or road sign, signal or warning device. Rather, Holt claimed negligence in failing to exercise reasonable care in operation of the flashing amber lights on the signs, that is, State did

not activate the flashing lights when it should have.

Holt also asserted State did have a duty to warn in that the ice was not open and obvious. He said there was nothing about the weather or roadway before the icy area that would have given notice to the drivers and therefore the icy area presented a trap. Holt also argued there was expert opinion in the record which presented a question of fact as to whether activation of the flashing lights would have reduced the probability of loss of control of the second vehicle and the resulting accident.

The trial court granted summary judgment in favor of State without specific findings. On appeal from that order, Holt contends the trial court erred by granting summary judgment in favor of State based on any of the grounds asserted by State below. Summary judgment is appropriate where it appears there is no substantial controversy as to any material fact, and that a party is entitled to judgment as a matter of law. *First State Bank v. Diamond Plastics*, 891 P.2d 1262, 1266 (Okla.1995). All inferences to be drawn from the underlying facts will be reviewed in the light most favorable to the party opposing the motion for summary judgment. *First State Bank v. Diamond Plastics*, at 1266.

■ We find merit in Holt's contention that State is not exempt from liability under 51 O.S.1991 § 155. Statutory construction is a matter of law, and we will review *de novo* a trial court's determination of statutory language. *Oklahoma Employment Security Commission v. Oklahoma Merit Protection Commission*, 900 P.2d 470 (Okla.App.1995) (cert. denied).

■ The Act, as a derogation of common law, is to be liberally construed with a view to effect the object of the act and to promote justice. *Gleason v. City of Oklahoma City*, 666 P.2d 786 (Okla.App.1983); 25 O.S.1991 § 29. The Act was the Legislature's response to *Vanderpool v. State of Oklahoma ex rel. Oklahoma Historical Society*, 672 P.2d 1153 (Okla.1983), wherein the Oklahoma Supreme Court judicially abrogated the common-law doctrine of sovereign im-

munity. The Act redefined the parameters of governmental tort liability in Oklahoma by waiving governmental immunity "subject to the limitations and exceptions specified in" the Act. *Anderson v. Eichner*, 890 P.2d 1329 (Okla.1994); 51 O.S.1991 § 153. Among those limitations and exceptions are the 31 "carefully circumscribed exemptions" found in § 155. *Anderson*, at 1338. Thus, the object of the Act was to make State and its political subdivisions liable in tort, except where the Legislature *specifically and explicitly* provided exemptions from liability. We believe those exemptions must therefore be construed restrictively.

We cannot find that § 155(8) has been construed by this state's appellate courts. We do, however, find guidance in the holdings of our sister appellate courts. In *Draskowich v. City of Kansas City*, 750 P.2d 411 (Kan.1988), the Kansas Supreme Court construed a section of the Kansas Tort Claims Act almost identical to § 155(8). There, the plaintiff Draskowich was injured when her car went off the road after hitting ice formed by water from a break in the water line. The Kansas Supreme Court held the snow and ice exemption did not apply because the ice on the highway was not the result of *natural weather conditions.* That Court further held the question of whether the city failed to take actions reasonably necessary for the protection of travelers was an issue of fact.

The Indiana Court of Appeals has found that ice created when water is allowed to spill off the property of adjacent landowners onto a public roadway is not a "temporary condition resulting from the weather", as is exempted under that state's Tort Claims Act. *Walton v. Ramp*, 407 N.E.2d 1189 (Ind.App. 1980); I.C. 34-4-16.5-3. The *Walton* Court held ice formed as alleged was a "recurring danger resulting from more than just the weather". In *Walton*, the Indiana Court of Appeals also held that where the defect is caused by a third person, as the ice was in the present matter, the negligence for which the municipality is liable is not the creation of the defect, but instead the negligence in failing to remove or guard the defect after actual or constructive notice thereof.

We will construe a statute according to the fair import of its words taken in their usual sense, but in connection with the context used and with reference to the purpose of the provision. *Lincoln v. Lincoln*, 840 P.2d 41 (Okla.App.1992). We find the words "ice conditions", when considered in the context used in § 155(8), means ice created by natural weather conditions.

Snow, in its usual sense, is a natural weather condition. Even more clearly, the exempt "temporary or natural conditions on any public way or other public place" must expressly be due to weather conditions. The purpose of § 155(8) was to exempt those conditions over which man has no control. In the present case, the moisture necessary for formation of the offending ice was provided by human intervention. That human element removes the present matter from under the umbrella of § 155(8).

The dissent believes restricting the exemption to *natural* ice conditions renders superfluous the clause in § 155(8), "unless the condition is affirmatively caused by the negligent act of the state", because the state can never cause a natural weather condition. The dissent misperceives the meaning of § 155(8). The emphasis in construction of § 155(8) must be on the source of the weather element causing damage or injury, not the ultimate condition resulting in the mishap.

If snow, ice or other weather element creates the offending condition without human intervention, the state is exempt. However, even if the snow or ice is of natural origin, but the state acts affirmatively to create a dangerous condition, or exacerbates the natural danger already existing, the state is not exempt. Among other possible scenarios, this could occur in one of the examples used by the dissent, moving snow or ice to create the dangerous condition. The proviso clause is not inconsistent with construing § 155(8) to mean the "ice conditions" must originate from natural weather conditions.

We are also persuaded by Holt's argument that § 155(15) does not exempt State from liability because the negligent acts alleged are not within those acts delin-

eated as exempt in that section. The central point of Holt's allegations is that State unreasonably failed to activate the amber flashing lights already situated atop the warning signs. Corollary to that point is the allegation that State failed to establish a procedure whereby it would be notified when water was to be released through the dam so that it could determine if the flashing lights needed to be activated.

Holt's allegations are not grounded on the absence, condition, location or malfunction of the warning signs or flashing lights. He simply argues the signs and flashing lights which were there were not properly utilized, apparently conceding the signs and warning lights were in proper condition, were properly located and were properly capable of functioning. Additionally, the clause in § 155(15) relating to failure to *initially* place signs or devices is clearly not applicable because the parties agree the warning signs and flashing lights were in place. *See, Turner v. Board of County Commissioners,* 858 P.2d 1288 (Okla. App.1993). State can gain no relief from liability in § 155(15).

■■■ Nor does the discretionary function exemption in § 155(5) have application in this case. Whether to place the warning signs or flashing lights at the approaches to the dam was an exercise of State's discretion, but once having done so, the decision when to activate the flashing lights was ministerial and would not afford immunity from liability. *Robertson v. City of Jones,* 832 P.2d 432 (Okla.App.1991).

■■■ Because we have found State is not exempt from liability, it has the same duties under tort law as a "private person or entity". 51 O.S.1991 § 153(A). Ordinarily, a landowner has no duty to warn others of a *natural* accumulation of ice. *Weatherall v. Yorktown Homeowner's Association,* 852 P.2d 815 (Okla.App.1993). However, we have found the accumulation of ice in this case was not natural, but was the result of a human decision to release water through the dam. The general rule does not apply.

In its brief supporting its motion for summary judgment, State contended it had no duty to warn of the ice because it was open and obvious and because State had no notice or knowledge superior to that of the driver of the car which hit the Holts. We do not find either contention supported by the record as a matter of law.

■■■ There is no duty to warn of defects or conditions which are open and obvious, that is, readily observable, but conversely, there is a duty to warn of hidden defects, traps, snares and pitfalls. *Krokowski v. Henderson National Corporation,* 917 P.2d 8 (Okla.1996). Although the accident occurred during daylight hours, and the weather was clear, there is no evidence the ice was so observable as to be open and obvious. The weather conditions were not such as to put the drivers on notice of possible ice and the approaching roads were clear of ice. The ice was only on a small part of the roadway over the dam. Whether the ice was so observable as to preclude the requirement for State to provide a warning is a matter of fact for the jury.

There is evidence in the record that before the accident, State was aware of the fact that ice could form on the dam as the result of water being released through the dam and that the ice would create a hazardous condition to vehicles. That evidence was provided by the deposition testimony of Dan Friess, Division Risk Manager for the Department of Transportation.. Therefore, State was on notice of the possible danger and had knowledge superior to the drivers involved.

■■■ Finally, State asserted that Holt's claims should fail because they were speculative and did not show a causal connection between the alleged breaches of duty and Holt's loss. More specifically, State argued "[r]easonable persons cannot conclude that had the amber lights been flashing the collision would not have occurred". As evidentiary material in opposition to State's motion for summary judgment, Holt provided the affidavit of an expert in the field of accident reconstruction. The expert opined that had the lights been flashing, both drivers would have most probably prepared themselves to drive on ice by reducing speed, and that the reduced speed would have resulted in reduced probability of both losing control and fatal

injuries. When considered in a light most favorable to Holt, the evidence was sufficient to send the question of causation to the jury.

Because State is not immune from liability, and with material issues of fact remaining in controversy, the trial court erred in granting summary judgment in favor of State and its order is REVERSED. This matter is REMANDED to the trial court for further proceedings consistent with this opinion.

JOPLIN, J., concurs.

BUETTNER, J., dissents with separate opinion.

BUETTNER, Judge, dissenting:

I dissent. The exemption from liability found in 51 O.S.1991 § 155(8) concerning "ice conditions" cannot be read to mean ice formed solely as a result of natural weather conditions. Otherwise, the last phrase of the exemption: "unless the condition is affirmatively caused by the negligent act of the state," would be superfluous because the state can never cause a natural weather con-dition. This phrase seems to be more consistent with the idea of a man-made icy condition like a broken pipe that puts ice on a highway, or a person moving ice or snow and thereby creating a dangerous condition. The state would not be liable unless there was an affirmative negligent act of the state regarding the broken pipe, or the movement of the snow or ice.

In this case, ice formed on the roadway as a result of a release of water from the dam by the United States Corps of Engineers. There is no evidence that a negligent act of the state caused the icy condition. The legislatively created exemption was properly applied in this case. As a result, I would affirm the summary judgment and not reach the applicability of § 155(15).