OSCN Found Document:LOPEZ v. BD. OF COUNTY COMMISSIONERS OF CHEROKEE COUNTY

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 LOPEZ v. BD. OF COUNTY COMMISSIONERS OF CHEROKEE COUNTY
2016 OK CIV APP 69
383 P.3d 790
Case Number: 114002
Decided: 10/06/2016
Mandate Issued: 11/02/2016
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2016 OK CIV APP 69, 383 P.3d 790

 

TERESA LOPEZ, Plaintiff/Appellant,
v.
BOARD OF COUNTY COMMISSIONERS OF CHEROKEE COUNTY, Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF
CHEROKEE COUNTY, OKLAHOMA

HONORABLE DARRELL G. SHEPHERD, TRIAL JUDGE

AFFIRMED IN PART, REVERSED IN PART
AND REMANDED FOR FURTHER PROCEEDINGS

Michael W. Boutot, Tulsa, Oklahoma, for Plaintiff/Appellant
Andy A. Artus, COLLINS, ZORN, & WAGNER, P.C., Oklahoma City, Oklahoma, for Defendant/Appellee

JANE P. WISEMAN, PRESIDING JUDGE:

¶1 Plaintiff Teresa Lopez appeals from an order of the trial court granting summary judgment to Defendant Board of County Commissioners of Cherokee County in this negligence/personal injury action. This appeal proceeds under Supreme Court Rule 1.36, 12 O.S. Supp. 2015, ch. 15, app. 1, without appellate briefing. After review, we affirm in part, reverse in part, and remand for further proceedings.

FACTS AND PROCEDURAL BACKGROUND

¶2 According to the first amended petition, on June 26, 2011, Plaintiff was a passenger on a motorcycle driven by Glen Baker when he turned left and "failed to yield to [a] stop sign and Thomas Molloy struck Glen Baker['s] motorcycle, causing injury to [Plaintiff]." The collision between Glen Baker, who was southbound turning east, and Thomas Molloy, who was westbound, occurred at the intersection of County Road 443 and County Road 640.

¶3 Plaintiff was seriously injured and brought the present negligence lawsuit against Glen Baker, Thomas Molloy, and the Board of County Commissioners of Cherokee County. She alleges the Board was negligent in failing to maintain the northeast corner of the intersection and the vegetation overgrowth obstructed the view of both drivers, causing the truck to collide with the motorcycle. Plaintiff also claims the Board "had a duty to maintain advance warning signs and [sight] line vegetation control" at the intersection. Plaintiff states the Board's negligence directly caused her damages including past, present, and future physical pain and suffering as well as medical expenses and permanent injuries.

¶4 The Board answered admitting some allegations, denying other allegations, and claiming insufficient knowledge of the remaining allegations. It asserted affirmative defenses including Plaintiff's damages "resulted from the negligence of one or more third parties" and the Board enjoys immunity pursuant to the Oklahoma Governmental Tort Claims Act (GTCA).

¶5 The Board filed a motion for summary judgment arguing (1) "[t]he Board is immune from suit for Plaintiff's claims related to overgrown vegetation pursuant to the [GTCA]," (2) "[t]he Board may not be held liable for any claims related to the placing of traffic control signs at the intersection of Road 443 and Road 640," and (3) "Defendant Board is exempt from Defendants Baker and Molloy's cross-claims."

¶6 In her response, Plaintiff argued the GTCA exemptions do not apply and the Board had a duty to maintain "foliage around its county road intersections," including its rights of way and beyond and to maintain the stop sign on Road 443.

¶7 The Board replied to Plaintiff's response arguing summary judgment should be granted because she failed to demonstrate any disputed material facts and failed to admit or deny the Board's undisputed facts in its Statement of Undisputed Facts as required by District Court Rule 13(b). The Board further contended (1) it had "no duty to maintain advance warning signs at the Intersection of Road 443 and Road 640," (2) it "is not obligated to maintain the area where the tree is located, as it is outside of the County's right of way," (3) it does not mow outside its right-of-way, and (4) it is immune from liability pursuant to several provisions of the GTCA.

¶8 The trial court granted the Board's motion for summary judgment finding the GTCA exemptions cited in Propositions I and II of the Board's motion apply.[1]

¶9 Plaintiff appeals.

STANDARD OF REVIEW

¶10 Because summary judgment resolves issues of law, we review a trial court's grant of summary judgment de novo. U.S. Bank, N.A. ex rel. Credit Suisse First Boston Heat 2005-4 v. Alexander, 2012 OK 43, ¶ 13, 280 P.3d 936. Using the de novo standard, we subject the record to a new and independent examination without regard to the trial court's reasoning or result. Gladstone v. Bartlesville Indep. Sch. Dist. No. 30, 2003 OK 30, ¶ 5, 66 P.3d 442. "All inferences and conclusions are to be drawn from the underlying facts contained in the record and are to be considered in the light most favorable to the party opposing the summary judgment." U.S. Bank, 2012 OK 43, ¶ 13. "Summary judgment is improper if, under the evidentiary materials, reasonable individuals could reach different factual conclusions." Id.

PROCEDURAL ISSUE

¶11 The Board maintains that because Plaintiff failed to admit or deny any of its undisputed facts in its Statement of Undisputed Facts, the facts must be deemed admitted pursuant to District Court Rule 13(b), 12 O.S. Supp. 2015, ch. 2, app. Rule 13(b) states in part:

In the statement, the adverse party or parties shall set forth and number each specific material fact which is claimed to be in controversy and reference shall be made to the pages and paragraphs or lines of the evidentiary materials. All material facts set forth in the statement of the movant which are supported by acceptable evidentiary material shall be deemed admitted for the purpose of summary judgment or summary disposition unless specifically controverted by the statement of the adverse party which is supported by acceptable evidentiary material.

The Board asserts that because "Plaintiff has not set forth or numbered any of [its] specific material facts which are claimed to be in controversy, . . . [its] undisputed material facts must be deemed admitted for the purposes of summary judgment." "In order for material facts that are not controverted by the adverse party to be deemed admitted for the purpose of summary judgment, those material facts must be supported by admissible evidence." Patterson v. Beall, 2000 OK 92, ¶ 23, 19 P.3d 839.

¶12 Even if the Board's uncontroverted facts are deemed admitted pursuant to Rule 13(b), the Board must still establish it is entitled to judgment as a matter of law. District Court Rule 13(e), 12 O.S. Supp. 2015, ch. 2, app.

ANALYSIS

I. Overgrown Vegetation 

¶13 Plaintiff argues in her petition in error that the trial court erred in granting the motion for summary judgment based on the Board's contention it was immune from liability pursuant to Oklahoma's GTCA. The Board claims exemption under four GTCA provisions: 51 O.S. Supp. 2013 §§ 155(4), (5), (10), and (13).[2] We will address each provision separately.

51 O.S. § 155(4)

¶14 The first exemption the Board relies on for immunity is § 155(4) which states "a political subdivision shall not be liable if a loss or claim results from . . . [a]doption or enforcement of or failure to adopt or enforce a law, whether valid or invalid, including, but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy." 51 O.S. Supp. 2013 § 155(4).

¶15 On this issue the Board asserts Plaintiff complains that the "Board failed to adopt a policy that would require its mowers to mow beyond the 16 ½ foot statutory right-of-way." As the Board points out, in Cherokee County, "there is a statutory right-of-way on each section line of two rods, or 16 ½ feet in each direction, from the center of the road" and "[t]he Board only mows foliage within its statutory-right-of-way, not on the land of other property owners" which would require obtaining their permission. The Board contends, "The tree or shrub on the east side of the intersection of Road 443 and Road 640 is not within the statutory right-of-way" and it "is exempt from liability when the County failed to adopt a policy of requiring its mowers to mow beyond the 16 ½ foot statutory right of way and trespassing on private property owners' property." To the extent Plaintiff is also complaining it "failed to adopt a policy that would require mowers to mow vegetation when the vegetation reached a specific height," the Board also claims exemption under this provision.

¶16 In response, Plaintiff states she "does not claim a lack of policy is to blame for the overgrown foliage," but rather the "negligent manner in which they cleared the subject intersection." Plaintiff further argues, "Whether or not there was a written policy is irrelevant to whether they did their job and kept the intersection safe."

¶17 The Board relies on Smith v. Oral Roberts University, 1986 OK 79, 732 P.2d 450, to support its position. In Smith, a widow alleged her husband's death was caused by "the City's failure to remove or to require the removal of vegetation, located on private property" which allegedly "obstructed the view of motorists on the Tulsa streets forming the intersection at which the fatal accident occurred." Id. ¶ 2. The City claimed 51 O.S. § 155(4) shielded it from liability. Id. The Oklahoma Supreme Court held:

In the case now before us the City of Tulsa, no doubt, could have removed or required the removal of the offending vegetation on private property under the auspices of its local nuisance ordinances had it been apprised of the condition. However, the City is without liability as regards adoption, enforcement or failure of its ordinance. The applicability of statutory exemption . . . entitled the City to the sustainment of its demurrer as it related to the alternative pleading of [plaintiff's] first amended petition alleging liability on the part of the City for the failure to remove or require the removal of the visual obstruction from private property. The first amended petition, however, is sufficient to state a theory upon which relief might be granted insofar as it alleges liability for the negligent maintenance of a dangerous condition on the part of the City on land possessed and/or controlled by the City.

Id. ¶ 4.

¶18 The Board asserts as an undisputed fact that the obstructing foliage was located on private property and that it "only mows foliage within its statutory right-of-way, not on the land of other property owners." Although there is no mention of whether the Board could have removed overgrown vegetation allegedly located on private property pursuant to any nuisance ordinance, evidence in the record does show the Board, as it has in the past, could have sought permission from the landowner to remove the vegetation but did not in this case.

¶19 Douglas Hubbard, County Commissioner for District One, testified that "we never mow over five foot each side of the road." David Neugin, supervisor of roads including mowing in District One, testified that the mowing width was restricted by the width of the mowing equipment the County used. He also testified that County employees mowed along the road in one direction and then "circle[d] back on another road." Neugin also admitted that he does not know where the right-of-way starts and stops at this intersection. Based on this record, the Board has not established that it mowed the entire width of its "statutory-right-of-way" at this intersection. "The party against whom the motion for summary judgment is directed can show through the movant's own evidentiary materials the existence of controverted fact issues." Hadnot v. Shaw, 1992 OK 21, ¶ 18, 826 P.2d 978.

¶20 And, even if the foliage on the intersection's east side was located on private property outside the right-of-way, the Board has not established the absence of overhanging limbs or shrub overgrowth within the right-of-way for which it has admittedly assumed responsibility. Plaintiff is entitled to the inference that some of the foliage and vegetation obstructing the motorcycle driver's view was located in the County's right-of-way. See Hargrave v. Canadian Valley Elec. Coop., Inc., 1990 OK 43, ¶ 14, 792 P.2d 50. If the moving party has not addressed all material facts, or if one or more of such facts is not supported by acceptable evidentiary material, summary judgment is not proper. Spirgis v. Circle K Stores, Inc., 1987 OK CIV APP 45, ¶ 10, 743 P.2d 682 (approved for publication by the Oklahoma Supreme Court). A dispute of material fact remains regarding the applicability of this exemption, and summary judgment pursuant to 51 O.S. § 155(4) on this question was improper.

51 O.S. § 155(5)

¶21 The second exemption the Board relies on is § 155(5) which states "a political subdivision shall not be liable if a loss or claim results from . . . [p]erformance of or the failure to exercise or perform any act or service which is in the discretion of the state or political subdivision or its employees." 51 O.S. Supp. 2013 § 155(5).

¶22 According to the Board, "[T]he decision to mow the area at all is therefore within the discretion of Defendant Board, and the decision to mow or not to mow is a discretionary decision of Defendant Board" and Hubbard testified he "could refuse to do any mowing [district wide] if he so chose." The Board further contends:

Certainly, it was at the very least within the discretion of Defendant Board whether to mow on private property, as such an action would constitute trespassing. Further, it would also certainly be within the discretion of Defendant Board to determine how high the vegetation needed to be before mowing would be done. Simply no action taken by Defendant Board lays [sic] outside the range of prohibited activity. As such, Okla. Stat. tit. 51, § 155(5) provides that Defendant Board is exempt from liability for its actions in mowing only up to the statutory right-of-way and avoiding trespassing on private property owners' property, and for its discretionary decisions on when to mow the vegetation in the vicinity of the incident.

¶23 "The state and its political subdivisions are specifically exempt from liability if the loss results from the performance or failure to perform a discretionary act or service." Walker v. City of Moore, 1992 OK 73, ¶ 10, 837 P.2d 876. "We have previously stated that the discretionary function exemption from governmental liability is extremely limited." Id. Under this exemption, "initial policy level or planning decisions are considered discretionary and the government is immune from liability with respect to those decisions." Gilmore v. Board of Comm'rs of Logan Cnty., 2006 OK CIV APP 125, ¶ 11, 147 P.3d 296. "On the other hand, operational level decisions made in performance of policy are considered ministerial and the government is not exempt from liability with respect to operational decisions." Id. "Under this approach, the government is subject to liability for routine decisions and daily implementation of policy or planning level decisions, but it retains immunity with respect to formulation of policy." Id.

¶24 Put simply, the "municipality has discretion whether to do or not to do a public work or improvement." Id. ¶ 12. "The duty is discretionary up to the time that it is determined to do the work or improvement." Id. "After the work is ordered and involves merely the execution of a set task, nothing remains for discretion: the duty becomes 'ministerial' or 'operational' and requires the municipality to do the work with reasonable care and in a non-negligent manner." Id. This Court in Gilmore found, "If Commissioners had previously undertaken to treat the gravel for dust, such act might be considered operational and not within the discretionary function exemption. However, the initial decision to pave a road with untreated gravel is discretionary and there can be no liability for claims resulting from that decision alone." Id. ¶ 17.

¶25 In Walker, the plaintiff "sustained severe injuries when a motorcycle on which he was riding collided with another vehicle." Walker, 1992 OK 73, ¶ 2. The Oklahoma Supreme Court determined, "The initial decisions as to the lay out of N.W. 27th Street and the traffic markings were discretionary acts of the City of Moore." Id. ¶ 12. "However, once the decisions were made, the City of Moore had an obligation to exercise ordinary care and diligence in maintaining the markings on the roadway so as to keep the street in a reasonably safe condition." Id. "Maintaining the existing pavement markings, the purpose of which is to warn that two lanes are merging into one lane, is operational and a ministerial function." Id. "Negligence in the performance of that ministerial function subjects the City to liability." Id. "That is, the maintenance of the existing pavement markings is not within the discretionary exemption of the Governmental Tort Claims Act." Id.

¶26 Hubbard testified he "could refuse to do any mowing [district wide] if he so chose"; however, he also testified that he has never refused to mow and agrees that "mowing is part of the operational responsibilities of Cherokee County." Hubbard agrees it is Cherokee County's responsibility to mow the east side of the intersection and the right-of-way at issue. He also testified that, ordinarily, the County would "try to stick with the right-of-way" because otherwise it would "catch trouble" from the property owner when it trimmed trees and vegetation on the owner's property. Neugin also testified it is the County's job to mow and if brush or foliage is on private property, the County has to obtain the landowner's permission before cutting it. No one disputes the Board mowed the east side of the intersection and right-of-way on previous occasions before this accident. And it is undisputed that the County had in the past and could have in this instance sought the property owner's permission to clear the vegetation and foliage Plaintiff claims was obstructing visibility at this intersection. Based on the evidence in the record, the Board had previously undertaken mowing the east side of the intersection and had in the past sought the property owner's permission to clear foliage when necessary. These actions do not fall under the County's discretionary function exemption but constitute operational responsibilities. We conclude § 155(5) does not apply to this case.

51 O.S. § 155(10)

¶27 The third exemption claimed by the Board is § 155(10) which provides, "The state or a political subdivision shall not be liable if a loss or claim results from . . . [n]atural conditions of property of the state or political subdivision . . . ." 51 O.S. Supp. 2013 § 155(10).

¶28 The Board argues that "[i]t is clearly undisputed that the growth of vegetation is a natural condition of the property of Defendant Board." It further asserts it "did not cause the vegetation to grow; it is a natural process of all vegetation throughout the world" and "[t]o the extent Plaintiff's claim results from the natural growth of vegetation on the statutory right-of-way, Defendant Board is . . . exempt from liability from the claim under" § 155(10). We disagree.

¶29 Because we find no law aiding us in interpreting this provision, we refer to § 155(8) which also uses the phrase "natural conditions" with respect to weather conditions.[3] Interpreting this provision, this Court in Holt v. State ex rel. Oklahoma Department of Transportation, 1996 OK CIV APP 101, ¶ 16, 927 P.2d 57, determined, "The purpose of § 155(8) was to exempt those conditions over which [a person] has no control." We find this interpretation equally applicable to the phrase "natural conditions" as it appears in § 155(10). The vegetation here was clearly not a condition "over which [a person] has no control" because the Board admittedly had the responsibility to mow and maintain its statutory right-of-way at the intersection. We conclude § 155(10) does not apply to this case.

51 O.S. § 155(13)

¶30 The last exemption cited by the Board is § 155(13) which provides:

The state or a political subdivision shall not be liable if a loss or claim results from . . . [i]nspection powers or functions, including failure to make an inspection, review or approval, or making an inadequate or negligent inspection, review or approval of any property, real or personal, to determine whether the property complies with or violates any law or contains a hazard to health or safety, or fails to conform to a recognized standard . . . .

51 O.S. Supp. 2013 § 155(13).

¶31 Board contends this exemption shields it from liability because a "claim based on failure to inspect government property at regular intervals is exempt from liability." Board further argues that Plaintiff's claim "that the collision resulted in large part from overgrown vegetation on the east side of the intersection of Road 443 and Road 640 . . . is essentially a claim that Defendant Board did not properly inspect the road to determine whether additional mowing of vegetation needed to be done."

¶32 "[M]aintenance of property is not the same thing as inspection of property for § 155(13)." Moran v. City of Del City, 2003 OK 57, ¶ 10, 77 P.3d 588. "A landowner may be liable for negligent maintenance of property irrespective of its inspection powers or functions." Id. The Moran Court further concluded that "[a]n exemption arising from an 'inspection power or function' cannot include becoming aware of circumstances in a general sense without also bringing many types of negligence cases within the class of exempted claims." Id. ¶ 12. The Court said, "Were we to hold otherwise we would put in doubt the viability of every GTCA claim based upon what a defendant should have known. . . . [and] [s]uch an interpretation would expand the application § 155(13) to the point that many other provisions of § 155 would be superfluous." Id.

¶33 The Moran Court concluded:

We thus view § 155(13) as describing the exercise of a particular governmental "power" or "function" and not a simple familiarization with one's own property. Governmental entities exercise inspection powers and functions in many contexts, but no particular governmental inspection power or function is at issue in this case.

Id. ¶ 15.

¶34 Although rejected in Moran, the Board seems to assert that a failure to inspect the road to determine "whether additional mowing of vegetation needed to be done" constitutes an inspection function covered by § 155(13). Because no particular governmental inspection power or function is at issue in this case, we conclude § 155(13) is not applicable. The Board is actually seeking protection based on its failure to acquire knowledge that the property had overgrown foliage. Because we conclude the Board is either not immune from liability under the cited GTCA provisions or questions of fact prohibit us from making such a determination, we reverse the summary judgment in favor of the Board based on the exemptions claimed in "Proposition I" of the motion for summary judgment and remand for further proceedings.

II. Stop Sign 

¶35 Plaintiff additionally claims the trial court erred in granting summary judgment to the Board on the issue of placing and maintaining traffic signs. The undisputed material facts from the Board's motion for summary judgment state:

14. The North/South Road of the intersection is Road 443 and is the boundary between Cherokee County and Mayes County, and Mayes County has the responsibility for maintaining all right-of-ways on Road 443. (See Exhibit 7, Deposition of Hubbard, 41:2-41:15).
. . . .
26. The stop signs north and southbound on Road 443 were placed and maintained by Mayes County, not Cherokee County. (See Exhibit 10, Deposition of Neugin, 46:20-47:6).

And, in his affidavit submitted in support of the Board's motion, Hubbard testified that "Cherokee County has no responsibility for placing or maintaining the stop signs on County Road 443 at the intersection with County Road 640, in either the northbound or southbound directions. Mayes County bears responsibility for placing and maintaining said stop signs."

¶36 Plaintiff argues that the Board did have a duty to maintain the stop sign based on testimony given by Hubbard. Hubbard testified that he "had information that [Baker] had run the stop sign, and [he] wanted to make sure there was a stop sign there. It's not our responsibility for that one, but it doesn't matter when it's public safety."

¶37 We agree with the Board that this testimony, when considered with all of Hubbard's testimony, does not conflict with his or Neugin's undisputed testimony that Mayes County is solely responsible for placing and maintaining the stop signs at this intersection. It is undisputed that the stop sign in question was placed and maintained by Mayes County for which Cherokee County had no responsibility.[4] The County did not place or maintain the stop signs at this intersection, and Plaintiff cannot maintain a negligence claim on this basis against the Board. There is no genuine issue of material fact on this question and the trial court properly granted the Board summary judgment on this issue.

CONCLUSION

¶38 A de novo review of the record shows the trial court's decision must be affirmed in part, reversed in part and remanded for further proceedings.

¶39 AFFIRMED IN PART, REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS.

GOODMAN, C.J., and FISCHER, J., concur.

FOOTNOTES

[1] In its order filed May 7, 2015, the trial court found "Defendants Glen Baker and Thomas Molloy have dismissed their respective cross claims against the Board prior to this hearing, making the Board's arguments in Proposition III moot. Therefore, the Court grants the Board's motion for [s]ummary [j]udgment as to the Plaintiff and dismisses the Board from this case. Furthermore, the Court finds that there is no just reason for delay and this order is hereby certified for immediate appeal." It should be noted that the result of granting a motion for summary judgment is, in law, a judgment, not a dismissal.

[2] We cite the current version of the statute; however, the relevant provisions remain unchanged since the date of the accident.

[3] Title 51 O.S. Supp. 2013 § 155(8) provides:

The state or a political subdivision shall not be liable if a loss or claim results from . . . [s]now or ice conditions or temporary or natural conditions on any public way or other public place due to weather conditions, unless the condition is affirmatively caused by the negligent act of the state or a political subdivision . . . .

[4] In its summary judgment brief in its penultimate proposition, the Board cites the exemption from liability in § 155(15) of the GTCA for the "[a]bsence, condition, location or malfunction of any traffic or road sign" and for the "failure of the state or any political subdivision to initially place any of the above signs." 51 O.S. Supp. 2013 § 155(15). Based on our disposition above, we deem it unnecessary to address this alternative argument.






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1987 OK CIV APP 45, 743 P.2d 682, 58 OBJ 1702, Spirgis v. Circle K Stores, Inc.
Discussed
 2006 OK CIV APP 125, 147 P.3d 296, GILMORE v. BOARD OF COMMISSIONERS OF LOGAN COUNTY
Discussed
 1996 OK CIV APP 101, 927 P.2d 57, 67 OBJ 3577, Holt v. State ex rel. Oklahoma Dept. of Transp.,
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1986 OK 79, 732 P.2d 450, 57 OBJ 3029, Smith v. Oral Roberts University
Discussed
 1990 OK 43, 792 P.2d 50, 61 OBJ 1134, Hargrave v. Canadian Valley Elec. Co-op., Inc.
Discussed
 1992 OK 21, 826 P.2d 978, 63 OBJ 442, Hadnot v. Shaw
Discussed
 1992 OK 73, 837 P.2d 876, 63 OBJ 1518, Walker v. City of Moore
Discussed at Length
 2000 OK 92, 19 P.3d 839, 71 OBJ 3016, PATTERSON v. BEALL
Discussed
 2003 OK 30, 66 P.3d 442, GLADSTONE v. BARTLESVILLE INDEPENDENT SCHOOL DISTRICT NO. 30
Discussed
 2003 OK 57, 77 P.3d 588, MORAN v. CITY OF DEL CITY
Discussed
 2012 OK 43, 280 P.3d 936, U.S. BANK, N.A. v. ALEXANDER
Discussed at Length
Title 51. Officers
 Cite
Name
Level

 51 O.S. 155, Exemptions From Liability
Discussed at Length